In re CONSOLIDATED PRETRIAL PROCEEDINGS IN AIR WEST SECURITIES LITIGATION.

Patricia Scott ANDERSON et al., Plaintiffs,

v.

AIR WEST INCORPORATED et al., Defendants.

Dorothy BEECHER et al., Plaintiffs,

v.

Richard C. GANO, Jr., et al., Defendants.

Jack SILVERSTEIN et al., Plaintiffs,

v.

Richard C. GANO, Jr., et al., Defendants.

Nos. C–75–0945 AJZ, C–73–0529 AJZ and C–74–2475 AJZ, MDL No. 177 AJZ.

United States District Court, N. D. California.

Aug. 24, 1976.

Farella, Braun & Martel, Jerome I. Braun, Randall W. Wulff, San Francisco, Cal., Geesey & Scott, James F. Scott, South San Francisco, Cal., for plaintiff Anderson and all others similarly situated.

Thomas Elke, John F. Banker, San Francisco, Cal., for plaintiff Beecher and all others similarly situated.

David B. Gold, San Francisco, Cal., for plaintiff Silverstein and all others similarly situated.

Brobeck, Phleger & Harrison, E. Judge Elderkin, Thomas A. Welch and J. Philip Martin, San Francisco, Cal., for Summa Corp. and Hughes Air Corp., and Administrators Richard C. Gano, Jr., Annette Gano Lummis and William R. Lummis, and the First National Bank of Nevada.

## ORDER REGARDING EFFECT ON CLASS MEMBERS OF COURT'S ORDER IMPOSING SANCTIONS ON ESTATE OF HOWARD R. HUGHES

ZIRPOLI, District Judge.

On July 2, 1976, the court orally granted the motions of plaintiffs in *Anderson, Beecher,* and *Silverstein* for sanctions against the estate of Howard R. Hughes based on Hughes' failure to appear for his deposition. At that hearing defendants contended that only the named plaintiffs in these actions and not the unnamed members of the classes certified on July 1, 1976, could be the beneficiaries of any order imposing sanctions. Because this issue had not been briefed by the parties, the court set up a briefing schedule and set that issue down for hearing on August 13, 1976. Having considered the briefs submitted by the parties and having heard oral argument on the matter, the court now sets forth its ruling.

The issue before the court is whether an order imposing the sanction of default for a failure to provide discovery inures to the benefit of the unnamed members of the class when that failure to provide discovery occurs before the class has been certified and when the order imposing sanctions is entered after the class has been certified but before notice to the class has been sent. Key to the resolution of this issue is the question of the treatment to be accorded a class action during the period between the filing of the suit and the ruling on a motion to certify.

Professor Moore is of the view that during the period between the filing of a suit and the court's ruling on a motion to certify the class, the suit should be treated as a class action. If the court then determines that the suit should proceed as a class action, "the action should be viewed as having been a class action from the date of commencement rather than the determination date." 3B Moore's Federal Practice ¶ 23.50 at 23–1103–04. Since the instant suit was filed as a class action and since it was duly certified as such, according to Professor Moore, this case should be treated as if it were a certified class action from the day it was filed. Therefore, the sanctions entered on July 2 should be considered as having been entered on behalf of all members of the class, even though the events leading up to those sanctions occurred before class certification was granted.

There is considerable support for Professor Moore's view of the law. The court in *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 42 F.R.D. 324 (E.D.Pa. 1967), stressed that the language of Rule 23 and the language of the Notes of the Advisory Committee support the notion that a suit filed as a class action should be treated as such until it is determined to be only an individual action. The court noted that "[t]he use of the word 'maintained' in 23(c)(1) is some indication that the court is expected to determine what the lawsuit has always been, not what it is about to become." *Id.* at 326. Similarly, the court noted that the Advisory Committee's notes speak in terms of a suit being *"stripped* of its character as a class action" when the court determines that the suit should not proceed as a class action.

This view of the nature of an uncertified class action has been adopted by courts dealing with class action questions in a variety of contexts. For example, the court in

*Philadelphia Electric Co. v. Anaconda American Brass Co., supra,* held that Rule 23(e), dealing with the dismissal or compromise of a class action, applies to uncertified class actions. This is the majority view. The Southern District of New York has held that a preliminary injunction, the hearing for which was held prior to class certification, nevertheless inures to the benefit of members of the class. *Leisner v. New York Telephone Co.,* 358 F.Supp. 359 (S.D.N.Y. 1973). And most importantly, the Supreme Court in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), held that the filing of a class action tolls the statute of limitations during the period between the filing of the class action and the court's ruling on the question of class certification.

■ The Court's reasoning in *American Pipe* is compelling:

> *A federal class action is no longer "an invitation to joinder" but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions.* Under the circumstances of this case, where the District Court found that the named plaintiffs asserted claims that were "typical of the claims or defenses of the class" and would "fairly and adequately protect the interests of the class," Rule 23(a)(3), (4), *the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue. . . .* To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other

available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

*Id.* at 550–51, 94 S.Ct. at 764, 38 L.Ed.2d 725. (emphasis added). This reasoning applies with equal force to the case at bar. Knowing that the testimony of a party was crucial to the case, and knowing that that party's health might be precarious at best, unnamed members of the class would be forced to intervene in the case and participate in all discovery pending class certification unless they could be assured that the fruits of the discovery conducted by the named plaintiffs, including any sanctions imposed for an irreparable failure to provide discovery, would inure to their benefit. Accordingly, the court concludes that the rule which should govern this case is the rule adopted by the Supreme Court in *American Pipe*:

> During the pendency of the District Court's determination [of whether the suit should proceed as a class action], which is to be made "as soon as practicable after the commencement of an action," potential class members are mere passive beneficiaries of the action brought in their behalf. Not until the existence and limits of the class have been established and notice of membership has been sent does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case.

*Id.* at 552, 94 S.Ct. at 765, 38 L.Ed.2d at 726.

■ Despite the persuasive reasoning and holding of *American Pipe, supra,* the Administrators of the Hughes estate (hereinafter "the Administrators") contend that Rule 23(c)(1) requires that this court hold that the sanctions imposed against the Hughes estate inure only to the benefit of the named plaintiffs.[1] This argument is not without merit. Before Rule 23 was extensively amended in 1966, the so-called "spurious" class action was subject to abuse

---

1. Rule 23(c)(1) provides:

As soon as practicable after the commencement of an action brought as a class action,

the court shall determine by order whether it is to be so maintained. . . .

through "one-way" intervention because there was no mechanism for identifying the actual members of the class prior to entry of final judgment. As a result, potential class members could often await the outcome of a spurious class action before deciding whether to be bound by the judgment. *American Pipe, supra* at 545–47, 94 S.Ct. 756, 38 L.Ed.2d at 722–723. To eliminate this problem, Rule 23 was amended to require a prompt determination of whether a suit may be maintained as a class action. Rule 23(c)(1). In addition, in the case of a Rule 23(b)(3) action, such as the case at bar, the new rule also requires notice to the class so that early in the litigation potential class members will be forced to decide whether to opt out of the class or whether to remain a class member and be bound by the eventual judgment whether favorable or not. Rule 23(c)(2).

Thus the touchstone of the amendments to Rule 23 is the requirement that district courts not delay class certification until after the case has been decided on the merits. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *American Pipe & Construction Co. v. Utah, supra* ; *Larionoff v. United States,* 533 F.2d 1167 (D.C. Cir. 1976); *Jiminez v. Weinberger,* 523 F.2d 689 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976); *Home Savings & Loan Association v. Superior Court,* 54 Cal. App.3d 208, 126 Cal.Rptr. 511 (2d Dist.), *petition for hearing denied,* March 10, 1976. *Home Savings & Loan Association v. Superior Court,* 42 Cal.App.3d 1006, 117 Cal. Rptr. 485 (2d Dist. 1974), *petition for hearing denied,* Jan. 8, 1975. To implement this proscription, the Seventh Circuit in *Peritz v. Liberty Loan Corp.,* 523 F.2d 349 (7th Cir. 1975), ordered that the district court's class certification be vacated and that the action proceed as an individual action where the trial court purposely delayed class certification until after a jury trial on the issue of liability. Similarly, in *Case & Co., Inc. v. Board of Trade,* 523 F.2d 355 (7th Cir. 1975), the court of appeals treated an uncertified class action as an individual action in affirming a district court order granting summary judgment in favor of the defendants. This action deprived the lower court judgment of any res judicata effect against the unnamed members of the class. *Accord, Roberts v. American Airlines,* 526 F.2d 757 (7th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). *But see Haas v. Pittsburgh National Bank,* 381 F.Supp. 801 (W.D.Pa.1974), *rev'd on other grounds,* 526 F.2d 1083 (3d Cir. 1975) (district court found it proper to rule on cross motions for summary judgment where class had been certified but notice had not yet been sent to class requiring them to decide whether to opt out of class).

The Administrators argue that because this court ordered that Hughes' default be entered (an action equivalent to a determination on the merits) only one day after entering its order certifying the class and *before* sending notice to the class requiring potential class members to elect whether to remain bound by the judgment, the court violated the requirement of Rule 23(c)(1) that class certification and notification precede a ruling on the merits. To remedy this problem, the Administrators suggest that the court hold that only the named plaintiffs may benefit from the entry of the default of the Hughes estate. Thus the court faces the task of applying competing principles in attempting to effectuate the goals and purposes of Rule 23. On the one hand, the court is instructed by *American Pipe & Construction Co. v. Utah, supra,* to treat unnamed members of the class as passive beneficiaries of the orders and judgments of a court until the time that the class is certified and notice is sent to the class. This rule is necessary in order to avoid undermining the very purpose of Rule 23 which is to avoid a multiplicity of filings and interventions in what is meant to be "a truly representative suit." On the other hand, Rule 23(c)(1) admonishes the court to settle the class action questions before ruling on the merits in order to avoid "one-way intervention."

In the case at bar, the court concludes that the principles of *American Pipe* outweigh the Rule 23(c)(1) considerations

which caused the Seventh Circuit to vacate the class certification in *Peritz* and to treat the suit as an individual action in *Case.* In the instant case, unlike the situation in *Peritz* or in *Case,* there is no decision on the merits growing out of a trial or a motion for summary judgment. Instead, the court confronts a situation in which a defendant *forced* the court to take action which has the effect of a determination on the merits. Had Hughes complied with the discovery orders of this court, the class would have been certified long before there was any determination on the merits in this case, for although a considerable period of time elapsed between the filing of the complaints and the court's ruling on the motions to certify the class, the case was still in its preliminary stages at the time the class certification order was entered. It was Hughes' own defiance of the court's orders that led to an early determination on the merits. It would be unjust and unwise to enter an order which would require class members to file their own suits or intervene in a class suit in order to assure that they are protected should a defendant die or otherwise become permanently unavailable after having refused discovery in a class action. The danger to class actions created by such an order, a danger explicitly recognized in *American Pipe,* is far greater than the danger that class actions will be abused through one-way intervention, given the peculiar facts of the instant case. The court therefore holds that the order imposing sanctions runs in favor of both the named plaintiffs and the classes they represent.[2]

Accordingly, plaintiffs are directed to submit an appropriate order to provide that the defaults ordered against the Estate of Howard R. Hughes on July 2, 1976, shall run in favor of the members of the classes certified by the court on July 1, 1976.

---

2. The Adminstrators argue that this holding violates the precepts of the Due Process clause because Hughes had no notice that class, as opposed to individual, sanctions would be imposed should he refuse to appear for his deposition. This argument is disposed of by the Supreme Court's decision in *American Pipe, supra,* where the Court noted that the filing of a class action by a proper representative

notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may partici-

pate in the judgment. . . . [T]he defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

414 U.S. at 555, 94 S.Ct. at 767. In the case at bar, both Hughes' deposition and the motion for sanctions were noticed by the plaintiffs in their representative capacities. The Administrators cannot now claim that Hughes lacked notice of the consequences of his actions.