739 P.2d 301

**Joseph M. O'BOSKEY and Ann B. O'Boskey, husband and wife, and S. Kay Kemp, on behalf of themselves and all others similarly situated, Plaintiffs-Respondents,**

**v.**

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BOISE, now known as United First Federal Savings & Loan Association, a federally chartered savings and loan association, Defendant-Appellant.**

Nos. 15919, 16293.

Supreme Court of Idaho.

April 8, 1987.

Rehearing Denied June 11, 1987.

P. Craig Storti and John F. Kurtz, Jr. (argued), of Hawley, Troxell, Ennis & Hawley, Boise, for defendant-appellant.

Jon M. Steele, of Ellis, Brown, Sheils & Steele, Boise, for plaintiffs-respondents.

BISTLINE, Justice.

Defendant-appellant United First Federal Savings & Loan Association (United First) appeals from the district court's order (1) granting judgment for permanent injunction against United First and in favor of the plaintiff class members, and (2) awarding costs and attorney's fees to the plaintiffs. Plaintiffs ask for an award of attorney's fees on appeal. We affirm, and grant plaintiffs attorney's fees on appeal.

## I. BACKGROUND

The O'Boskeys executed a deed of trust dated November 1, 1977 encumbering certain real property in order to secure a loan from the named beneficiary, United First. In July of 1980, the O'Boskeys entered an agreement to sell the property to Kay Kemp. Kemp asked United First to allow her to assume the O'Boskeys' loan. United First insisted upon Kemp paying a loan origination fee and an increase of two percent in the interest rate.

Kemp refused to accept the increased interest rate. Kemp then purchased the property from the O'Boskeys, agreeing to assume all the obligations of the note and deed of trust, excepting the increased interest rate.

United First refused Kemp's tender of the loan origination fee and of monthly payments, and served notice of acceleration of the loan payments, default, and foreclosure. The acceleration provision on which United First premised its action read as follows:

> To protect the security of this Deed of Trust, Grantor agrees:
>
> . . . .
>
> 2. In the event the herein described property or any part thereof, or any interest therein is sold, agreed to be sold, conveyed or alienated by the trustor or by operation of law or otherwise, all obligations secured by this instrument, irrespective of the maturity dates expressed therein, at the option of the holder hereof and without demand or notice shall immediately become due and payable.

In response, the O'Boskeys and Kemp joined as plaintiffs and sued for declaratory and injunctive relief. They also moved for an order determining that the action be maintained as a class action. The alleged class consisted of those within the state of Idaho who had sold or purchased Idaho real property encumbered by a deed of trust containing the above due-on-sale provision, and who had paid or obligated themselves to pay an assumption fee and/or increased interest rate as a condition of assumption. Prior to sufficient discovery on and determination of the class issues, United First moved for summary judgment on the issue of the enforceability of the due-on-sale clause. The plaintiffs cross-moved for summary judgment.

On September 1, 1981, the district court filed a memorandum opinion and orders. Based on an insufficiently developed record, the district court initially denied without prejudice the request for class certification, though in this order and in its memorandum opinion and order of November 25, 1981, the court permitted further discovery on and left open the question of class certification. (In the latter order, the court ordered United First to produce all deeds in trust containing the due-on-sale clause.) The district court held that "[a] simple reading of the contract indicates that the provision is applicable to those cases in which a transfer of the property would impair the security." R., Vol. 2, p. 133–34. The district court granted partial summary judgment on the issue of the due-on-sale clause to the plaintiffs. The district court decided in the November opinion that the class ultimately determined "would be entitled to injunctive relief." R., Vol. 2, p. 125.

Thereafter, pursuant to I.A.R. 12, United First sought and obtained this Court's certification to appeal on the issue of whether the due-on-sale clause could be enforced only upon impairment of the security. While that appeal was pending, United First continued to enforce the due-on-sale clause against borrowers, and to obtain agreements increasing interest rates and including assumption fees. Ultimately, this Court unanimously affirmed the decision of the district court. *O'Boskey v. First Federal Savings & Loan Assoc.,* 106 Idaho 339, 678 P.2d 1112 (1984) (*O'Boskey I*).

Subsequently, the plaintiffs once again sought production from United First of deeds in trust containing the due-on-sale clause, and the district court once again ordered their production. On June 24, 1984, counsel for United First represented to the court that the 2,194 deeds United First had produced represented all such deeds. However, subsequent discovery and court orders produced another 2,079 class members.

On August 3, 1984, the district court issued a memorandum opinion and orders denying Albert and Sharon Bruno's motion to intervene and United First's motion for entry of judgment and dismissal of the action. In a unique motion, United First itself moved the court for an order enjoining it, United First, from enforcing the due-on-sale provision, but only as against Kemp and the O'Boskeys, and also for dismissal of the case. The accompanying affidavit of United First's vice-president, Robert G. Dickinson, admitted that the sale by the O'Boskeys to Kemp caused no "impairment of the security of the deed in trust." R., Vol. 2, p. 43. The district court denied the motion in view of the pending question of class certification.

On October 18, 1984, the district court certified the class, ordered notice to class members, and indicated that present grantors were entitled to injunctive relief against the enforcement of the due-on-sale clause. On October 29, notice was given to class members informing them that the court had determined that the class was entitled to injunctive relief.

On November 26, 1984, in its continuing efforts against certification of and notice to the class, United First filed the affidavit of its President, Robert D. Glaisyer. In that affidavit, Glaisyer testified that immediately after this Court's decision in *O'Boskey I* of March 1984, United First adopted the policy of "allowing loans secured by an O'Boskey form deed of trust to be assumed by the purchaser of the security property upon submission of adequate evidence that the new purchaser's credit was adequate to meet the applicable underwriting standards and an assumption fee based upon actual costs of processing the assumption was paid." R., Vol. 3, p. 241. In other words, United First would not invoke the due-on-sale clause absent impairment of security. *Id.* at 244.

On January 21, 1985, the district court entered judgment granting permanent injunction against invoking the due-on-sale clause absent impairment of security. The judgment further provided for costs, including "reasonable attorney fees if allowed by law." R., Vol. 3, p. 269.

In its May 17, 1985 memorandum opinion and order, the district court found that United First unreasonably asserted against the named plaintiffs the defense of impairment of security up to May 25, 1984, even though from the beginning of the law suit there was never any basis for this defense. The district court also found that United First's defense "as it relates to the plaintiffs' efforts to identify a class of persons entitled to injunctive relief and to obtain certification of that class has been unreasonable." R., Vol. 3, p. 327. The court concluded that "[t]he plaintiffs are entitled to attorney's fees for that effort." *Id.* Ultimately, the district court awarded attorney's fees amounting to $45,000.

## I.

## PROPRIETY OF THE PERMANENT INJUNCTION

United First asserts that the district court acted prematurely in imposing the permanent injunction against United First and in favor of the class prior to certification and notice to the class, as well as in advance of a motion or hearing, without benefit of a hearing,[1] and without issuing findings of fact and conclusions of law. Alternatively, argues United First, the district court erred by imposing the injunction where there was no evidence that United First would continue to enforce the due-on-sale provision after this Court issued its decision of *O'Boskey I.* Both of United First's arguments are premised on its erroneous conception that the merits and remedy were not decided in the district court's decisions of September 1 and November 25, 1981. At that time, United First pointed to no procedural error, and suggested no reason opposing the remedy imposed either to the district court or this Court on appeal. At the time it certified the class in 1984,

the only question for the district court concerning the injunction already decided upon was whether there was reason *not* to impose it. The district court was well within its discretion in determining that the injunction should inure to the benefit of the class.

As United First notes, in class actions the rules of procedure contemplate that ordinarily the class will be determined and given notice early in the proceedings and prior to deciding the merits. *See* I.R.C.P. 23(c) (1980); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *In re Consolidated Pretrial Proceedings in Air West Securities Litigation,* 73 F.R.D. 12, 14–15 (N.D.Cal.1976).[2] Otherwise, potential class members could await the determination of the merits prior to deciding whether to participate in the class and be bound by the judgment. *Id.*

■ While such is ordinarily the case, where the defendant precipitates or acquiesces to a decision on the merits prior to deciding the class questions, that defendant may not later complain of prematurity. As the Alaska court explained:

> While some courts have indeed required that class certification precede a determination of the merits, it is apparent that any right to such a procedure can be waived, either expressly or impliedly. We have no difficulty finding a waiver under the facts of this case. The plaintiffs diligently sought adjudication of the class action issues by twice moving for certification. The defendants initiated summary judgment proceedings while plaintiffs' second motion for certification of the class action was pending. Under these circumstances, the trial

---

**1.** We question the propriety of United First raising these arguments for the first time in its reply brief. *See* I.A.R. 35(a)(7) and (c) (Supp. 1986). We are unpersuaded by counsel's explanation at oral argument that he was forced to make these arguments in response to the respondents' assertion that the affidavit of Glaiyser came too late. United First is arguing that the district court procedurally erred in the various enumerated respects regardless of when the

district court received and whether the district court considered the Glaiyser affidavit. Nevertheless, we will address these arguments inasmuch as they lack merit and do no damage to the respondents' cause.

**2.** As the Idaho rules on class actions are taken from the federal rules, federal authority is relevant.

court did not err in ruling on the merits and then certifying the class.

> *State v. Alex,* 646 P.2d 203, 213–14 (Alaska 1982) (footnotes omitted); *accord, e.g., Katz v. Carte Blanche Corp.,* 496 F.2d 747, 762 (3d Cir.1974); *Air West, supra,* 73 F.R.D. at 16; *California Employment Development Department v. Superior Court,* 30 Cal.3d 256, 178 Cal.Rptr. 612, 636 P.2d 575, 577 & 579 (1981); *Civil Service Employees Insurance Co. v. Superior Court,* 22 Cal.3d 362, 149 Cal.Rptr. 360, 584 P.2d 497, 503–04 (1978).

The class action defendant who chooses to submit an issue on its merits to a trial court assumes the risk that an unfavorable judgment will benefit the class ultimately determined. *Civil Service, supra,* 584 P.2d at 504, 149 Cal.Rptr. at 367; *see Twin Lakes Improvement Association v. East Greenacres Irrigation Dist.,* 90 Idaho 281, 287, 409 P.2d 390, 396 (1965) ("The trial court was correct in finding that this was a class action, the effect of which would be enforceable against or on behalf of those having similar rights.")

Indeed, the advantages to the defendant may at times outweigh the risks, as notes the California court:

> As the decisions recognize, there are many reasons why a defendant may be willing, indeed even eager, to forego class notification prior to adjudication of some, or even all, of the principal legal issues in a case. In some cases, for example, a defendant may decide that the sending of notice itself will be detrimental to its interests, sullying its reputation or perhaps leading some class members to be less willing to continue an ongoing relationship with the defendant. In other cases, a defendant may want to avoid discovery or other litigation expenses entailed in notification which may be eliminated if the plaintiff's claim is rejected on the merits at an early stage of the proceeding.
>
> *Civil Service, supra,* 584 P.2d at 503–04, 149 Cal.Rptr. at 366–67.

The plaintiffs filed the instant case as a class action and sought declaratory and injunctive relief. As the district court observed, United First quickly moved for summary judgment on the merits well in advance of sufficient discovery to decide the class questions. R., Vol. 2, pp. 130–31 (decision of September 1, 1981). Nevertheless, the district court declared: "[T]here are areas involved in this case that seem appropriate for class treatment." *Id.* at 131. The district court proceeded to hold that the due-on-sale provision could not be invoked absent a showing of impaired security—a holding affirmed in *O'Boskey I.*

In its clarifying decision of November 25, 1981, the district court unambiguously established that the class ultimately established "would be entitled to injunctive relief," R., Vol. 2, p. 125, the relief sought in the original complaint. At this point, hearings had taken place, the district court had made findings and rendered conclusions on the merits and the remedy. United First appealed only on the issue of the enforceability of the due-on-sale clause.

After a long pendency on appeal and subsequent discovery pertaining to the class, in late 1984 and early 1985 the district court established the class, ordered notice, and extended the injunction to the class. The merits and remedy were long ago determined. United First had run the risk and now suffered the consequences of an adverse decision inuring to the class. It had appealed without raising any protestations over procedure. United First was and is far too late in objecting to the injunction and standing on its procedural rights.

■ Consequently, following this Court's decision in *O'Boskey I,* the only possible question for the district court concerning the propriety of the injunction was not whether it should not be imposed as the district court had decided in November of 1981. The decision of whether to impose injunctive relief is within the discretion of the district court. *Harris v. Cassia County,* 106 Idaho 513, 517, 681 P.2d 988, 992 (1984). As then Chief Justice Donaldson further observed for the Court: "The court which is to exercise the discretion is the trial court and not the appellate court, and

an appellate court will not interfere absent a manifest abuse of discretion." *Id.*

Citing our *Harris* decision among others, United First argues that because it had decided not to enforce the due-on-sale clause absent impairment of security, there was no further threat of injury necessitating an injunction. Without such a threat, says United First, the district court abused its discretion in imposing the injunction.

■ It is true that injunctions should issue only where irreparable injury is actually threatened. *See Cazier v. Economy Cash Stores, Inc.,* 71 Idaho 178, 187, 228 P.2d 436, 441 (1951); Wright & Miller, *Federal Practice and Procedure: Civil* § 2942 (1973). Where the conduct causing injury has been discontinued, the dispute is moot and the injunction should be denied. Wright & Miller, *supra,* § 2942, p. 371. However, as the United States Supreme Court observed, the trial court must be convinced that "there is no reasonable expectation that the wrong will be repeated." *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (*quoting United States v. Aluminum Company of America,* 148 F.2d 416, 448 (2d Cir.1945)). Further, the burden on the defendant to make this showing "is a heavy one." *Id.; see also, United States v. Concentrated Phosphate Export Assoc., Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968) ("The test for mootness in cases such as this is a stringent one.").

The reason for so burdening the defendant lies in inevitable questions concerning the motive of the defendant's voluntary cessation. The Supreme Court warned: "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentence and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Medical Society,* 343 U.S. 326, 333, 72 S.Ct. 690, 696, 96 L.Ed. 978 (1952). To accept such protestation and cessation on face value would leave the defendant "free to return to his [or her] old ways." *W.T. Grant, supra,* 345 U.S. at 632, 73 S.Ct. at

897. Thus, the power of the district court "to grant injunctive relief survives discontinuance of the illegal conduct." *Id.* at 633, 73 S.Ct. at 897; *accord, City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 n. 10, 102 S.Ct. 1070, 1074–75 n. 10, 71 L.Ed.2d 152 (1982); *Concentrated Phosphate, supra,* 393 U.S. at 203, 89 S.Ct. at 364.

■ In this case, the district court clearly was well within its discretion when it remained unconvinced that United First's alleged cessation eliminated any reasonable expectation of repetition of the wrong. Despite the district court's adverse decision of September 1, 1981, United First had continued to enforce the due-on-sale clause absent impairment of security while its appeal pended. After the district court's decision was affirmed in *O'Boskey I,* United First continued to resist the certification of and notice to the class, and gave no indication that it would not continue to enforce the clause against the potential class members. In an attempt to avoid notice to the class and imposition of the injunction in favor of the class, United First moved that it be enjoined from enforcing the clause against the named plaintiffs only and moved for dismissal. Finally, on November 26, 1984, after the district court had rendered its decision certifying the class, ordering notice to class members, and extending the injunction in favor of the class, United First filed the affidavit of Glaisyer attesting to having changed its policy as of the decision of *O'Boskey I* in March of 1984. A better example of an eleventh hour "protestation of repentence and reform" is difficult to imagine. The district court was unswayed from its findings of August 3, 1984:

> Since the defendant has apparently taken no action to notify borrowers of the Supreme Court ruling there are potentially numerous persons who have rights that *may not receive the benefits of those rights if this action is dismissed or otherwise terminated.* United First Federal apparently has no intentions of notifying its borrowers of the effect of the decision in this case. Dickinson deposition, p. 57.

Regardless of the fact that a class has not been certified at present it seems clear that there is a class entitled to injunctive relief and that had a stay not been entered pending appeal to the Supreme Court the class would have been certified some years ago. To allow the defendant to secure dismissal of this action at this point, after securing a stay of proceedings, smacks of unfairness. While Rule 23(e), I.R.C.P. is not controlling, the policy inherent in that rule would be defeated if the plaintiffs' action were dismissed. *Persons entitled to injunctive relief might well be left in the dark as to their rights, and it would be naive to assume that the defendant would give the type of notice necessary to inform those persons of their rights.*

R., Vol. 2, pp. 119–20 (emphasis added).

Based on United First's past and continued conduct, the district court believed potential class members would not "receive the benefits" of their rights absent notice and an injunction.[3] There was no manifest abuse of discretion in this conclusion.

## II.

### ATTORNEY'S FEES AT THE DISTRICT COURT

The district court awarded attorney's fees to the plaintiffs pursuant to I.C. § 12–121 (1979) (providing that the court may award attorney's fees to the prevailing party or parties), and I.R.C.P. 54(e)(1) (1980). The latter provides for attorney's fees pursuant to I.C. § 12–121 where the court finds "that the case was brought, pursued or defended frivolously, unreasonably or without foundation...." *See also, e.g., Eliasen v. Fitzgerald,* 105 Idaho 234, 241, 668 P.2d 110, 117 (1983). As is well established, "[t]he award of attorney fees under I.C. § 12–121 and I.R.C.P. 54(e)(1) at the trial level is a matter within the trial court's discretion." *Everett v. Trunnel,* 105 Idaho 787, 791, 673 P.2d 387, 391 (1983).

United First cites *Verway v. Blincoe Packing Co., Inc.,* 108 Idaho 315, 698 P.2d 377 (Ct.App.1985) for the proposition that the *conduct* of the parties, as opposed to the bringing, pursuing, or defending of the case, cannot afford the basis of an award pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1). United First primarily asserts that that district court abused its discretion in awarding attorney's fees by considering United First's enforcement of the due-on-sale clause during the pendency of the *O'Boskey I* appeal. This assertion distorts the grounds for the district court's award.

■ The district court did recount aspects of United First's conduct in its decision to award attorney's fees. However, the district court carefully observed that "the defendant's actions were not a part of the defense of this case. However, they have some relevance in that they show an attitude which may be relevant in interpreting other facts." R., Vol. 3, p. 318. The record shows the district court was aware of the *Verway* decision. Having disavowed consideration of conduct, the district court expressly established two grounds for its award (as discussed below). We reject United First's suggestion that the district court based its decision on grounds it said it did not consider, and not on the grounds enumerated.

The first of the two enumerated grounds was United First's assertion of the defense that the transaction between the named

---

**3.** The *Harris* decision on which United First relies present contrasting circumstances. There, the defendant, Cassia County, never refused paying indigent aid, which refusal the plaintiffs sought to have enjoined; it merely suggested the possibility absent available funds. Shortly thereafter, funds became available, the county gave notice to the plaintiffs and other applicants, and the county continued its payments without interruption prior to the commencement of the litigation. *Harris, supra,* 106 Idaho at 515, 681 P.2d at 990. This Court found no abuse of discretion in the district court's denying injunctive relief. *Id.* at 517, 681 P.2d at 992.

Here, to the contrary, the defendant had acted in the manner sought to be enjoined, continued to so act while it appealed the district court's decision, resisted notice to the potential class of a change of policy, and resisted certification of the class itself.

plaintiffs [4] threatened to impair the security. The district court discussed this ground as follows:

Another element of obstructionism appears clearly in the record prior to the appeal. At the outset of this case the defendant asserted that impairment of security by the proposed transfer was an issue. The prominence of this issue appears several places. The defendant's second affirmative defense stated the following:

"That Plaintiff, S. Kay Kemp, was not a qualified party to either obtain a new loan or to assume the existing loan obligation of the Plaintiffs O'Boskey for the reason that Plaintiff Kemp did not qualify pursuant to loan policies of Defendant and, therefore, no cause of action is presented in this matter."

The defendant's fifth affirmative defense asserted that "Plaintiff, S. Kay Kemp, is not qualified to either assume or take out a new loan for the purchase of the subject residence pursuant to the loan policies of Defendant." The assertion is clearly made that an *impairment of security was involved in this case.* That assertion affected decisions by this court. See memorandum opinion and orders filed September 1, 1981, and memorandum opinion and order filed November 25, 1981. The defendant asserted this as an issue to the Supreme Court in its motion for permission to appeal by certification, stating the following at page 5 of the emotion:

"If the District Court's order is not permitted to be appealed by certification then it will be necessary to have a trial to determine whether or not the sale or transfer of the property described in the deed of trust impairs the security of the deed in trust. After which the matter would again be before this court on appeal raising the questions of the proper interpretation and legal affect to be given this language together, in all probability, with other issues arising from the trial."

It is now clear to the court, and from the outset of this case has been clear to the defendant, that impairment of security by the proposed transfer was never an issue. Robert G. Dickinson, Senior Vice-President of United First Federal Savings and Loan Association, states the following in his affidavit filed May 25, 1984:

"That United First Federal Savings and Loan Association does not believe that the sale by plaintiffs O'Boskey to plaintiff Kemp of the real property which is discussed in the deed of trust given to United First Federal by plaintiffs O'Boskey causes an impairment of the security of the deed of trust, if plaintiff Kemp will personally assume the obligations secured thereby."

The deposition of Mr. Dickinson makes it clear that impairment of security as justification to invoke the due-on-sale clause was never an issue in this case. This court was advised it was an issue. The Supreme Court was told it was an issue. It was not an issue. The decisions to invoke the due-on-sale clause were based upon market conditions, not supposed security impairment.

R., Vol. 3, pp. 323–25 (emphasis added). The district court concluded that this defense was unreasonable. We see not a scintilla of error in this conclusion.

The second enumerated ground was United First's defense against class certification and notice. According to the district court, United First knew from the first of the class of persons deserving the injunctive relief indicated by the court in November of 1981. Nevertheless, United First withheld its knowledge and continued to oppose class certification and notice throughout the proceedings, even after the district court had decided the questions. These actions delayed dissemination of the effect of this Court's holding *O'Boskey I.* The district court observed:

A question that arises in one's mind is why has it been necessary to go through

against the class as a whole.

4. The district court clearly did not award fees due to United First's asserting this defense

the protracted proceedings that have taken place since the Supreme Court affirmed this court's rulings on the motions for summary judgment? *A reasonable person would assume that once the Supreme Court made its ruling that the defendant would take affirmative action to bring this matter to an end.* It could mark in conspicuous lettering on those instruments in its possession that the provision was unenforceable except in the event of security impairment and give notice of that fact to those who had executed deeds of trust. There would have remained nothing for this court to enjoin. However, the defendant did not do that. Instead, *it has continued the fight to keep information from those entitled to it. It has turned identification of the class members into a struggle that was not necessary or reasonable. It has obstructed and delayed the plaintiffs and their fellow class members.*[5] This exists in the context that the plaintiffs were not seeking financial damages that would recompense them, and the court had indicated it would only grant injunctive relief to the class members. The plaintiffs in this action could not receive money damages. With this knowledge the defendant has used its substantial resources and erected numerous barriers against adjudication of issues in this case.

... *[T]oo much of the defense in this case has been directed towards delay and obstruction.* Individuals who stand to profit very little personally have been met by a large financial institution that has used the tactic of intimidation in threatening foreclosure and the tactic of intimidation by raising the costs of litigation beyond what are reasonable. *This court finds, as this record indicates, that the defense of this case as it relates to the plaintiffs efforts to identify a class of persons entitled to injunctive relief and to obtain certification of that class has been unreasonable.* The plaintiffs are entitled to attorneys fees for that effort.

R., Vol. 3, pp. 325–27 (emphasis added).

Again, we can find no abuse of discretion in the district court's conclusions or award.

### III.

### ATTORNEY'S FEES ON APPEAL

As provided in I.A.R. 41(a) (Supp.1986), plaintiffs have applied for an award of attorney's fees on appeal pursuant to I.C. § 12–121 (1979) and I.R.C.P. 54(e)(1) (1980). The standard for such an award on appeal is the same as at the district court level. Where an appeal is brought or defended "frivolously, unreasonably or without foundation," then the appellate court will grant an application for attorney's fees. I.R.C.P. 54(e)(1).

 We find United First's appeal to be unreasonable and without foundation. Although United First's arguments to this Court superficially read reasonably, our review convinces us that its contentions in fact were, and had been so held, unreasonably grounded. Its arguments against the imposition of the injunction in 1984 assumed away the fact that the district court had considered and decided the merits and the remedy in 1981. Its arguments against the award of attorney's fees distorted the district court's rationale for the award. The district court commendably showed considerable fairness and restraint.

The decisions and judgment of the district court are affirmed. Costs of appeal, including attorney's fees, are awarded to plaintiffs-respondents.

HUNTLEY, J., and WALTERS, J. Pro Tem., concur.

DONALDSON, J., concurs in Parts I and II.

McFADDEN, J. Pro Tem., concurs in Part I.

---

5. United First's defense appears particularly unreasonable in light of its counsel's admission at oral argument that the injunction did no harm to United First, as it allegedly had already decided not to enforce the clause absent security impairment.