693 P.2d 448

**Peter D. LORANG, Plaintiff-Appellant,**

v.

**Ricky D. HUNT and Sallie A. Hunt, husband and wife,
Defendants-Respondents.**

No. 14961.

Supreme Court of Idaho.

Dec. 12, 1984.

Allen V. Bowles, Moscow, for plaintiff-appellant.

Roy E. Mosman, Moscow, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment against plaintiff-appellant Lorang, who brought the action seeking to quiet title in him as to a prescriptive easement over defendants-respondents Hunts' property. We affirm.

The Hunts own 3.7 acres of property, upon which they reside, abutting U.S. 95, a short distance north of Genesee, Idaho. Lorang owns a farm north of and adjoining the Hunt property. The Lorang property also abuts U.S. 95 for one-half mile. Since at least 1951, Lorang and his predecessors in interest have crossed over the Hunt property to reach the Lorang farm.

We note at the outset that Lorang does not claim nor does the evidence support an easement by necessity. As found by the trial court, "Although plaintiff's property fronts on Highway 95 for one-half of a mile, he finds it more *convenient* to reach his property by crossing defendants' front yard." (Emphasis added.) This appeal is therefore limited to Lorang's assertion that the nature of use of the Hunt property by Lorang and his predecessors in interest has created a prescriptive easement in favor of the Lorang property.

The elements of proof necessary to establish a prescriptive easement were set forth in *West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973):

"In order for a claimant to establish that he has acquired a private prescrip-

tive easement by adverse use, he must submit 'reasonably clear and convincing' proof of open, notorious, continuous, uninterrupted use, under a claim of right, with the knowledge of the owner of the servient tenement, for the prescriptive period. 'Under a claim of right' signifies use without recognition of the rights of the owner of the servient estate. Thus, a prescriptive right cannot be acquired if the use of the land is with the permission of its owner. Absent estoppel, permission to use the land of another can be revoked at any time, no matter how long the permitted use has continued.

\*     \*     \*     \*     \*     \*

"In the ordinary case, mere inaction and passive acquiescence is not a sufficient basis for proving that the use of the claimed right was with the permission of the owner of the servient tenement.

"The general rule is that proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began, raises the presumption that the use was adverse and under a claim of right. The burden is then on the owner of the servient tenement to show that the use was permissive, or by virtue of a license, contract, or agreement."

*Accord State ex rel. Haman v. Fox,* 100 Idaho 140, 594 P.2d 1093 (1979); *Webster v. Magleby,* 98 Idaho 326, 563 P.2d 50 (1977). *See also Crow v. Carlson,* 107 Idaho 461, 690 P.2d 916 (1984). Private easements by prescription are disfavored in the law. *Elder v. Northwest Timber Co.,* 101 Idaho 356, 613 P.2d 367 (1980).

In the instant cause, the pertinent evidence at trial was exclusively the testimony of witnesses who disagreed as to whether Lorang's access over the Hunt property originated in permission and, if so, whether at a later time it became prescriptive in nature. The trial court held, and we agree, that the access began with permission of the predecessors of Hunt and that Lorang has not shown that the permissive right was ever changed to one based on a claim of adversity.

Ed Hasfurther and his father owned what is now the Hunt property for approximately 70 years. In 1972, Ed Hasfurther sold that property to Dave Wagar, who built a house upon the property and in turn sold it to the Hunts in 1977. Hasfurther testified that in 1951, Lorang's father (then owner of the Lorang farm) requested permission of Hasfurther to use the 3.7-acre tract for access to the Lorang farm until a bridge was built connecting Highway 95 to the Lorang farm. Hasfurther granted that permission, and Lorang's father used the access with Hasfurther's consent until 1957, when Lorang began farming his father's property under lease. Sometime between 1957 and 1960, the expected bridge was completed, but the Lorangs continued to use the 3.7-acre tract for access to the Lorang farm. Plaintiff Lorang purchased the Lorang farm in 1968.

Hasfurther could not see the 3.7-acre tract from his house and did not know or care if the Lorangs used it. The trial court found that from 1951 to 1972, the Hunts' predecessors in interest had not used the 3.7-acre tract of land for any beneficial purpose, but that it "could not be considered wild and open land for the purpose of creating a presumption that use by others than the owner was permissive." The trial court also expressly found that "plaintiff's use of the land for access between 1951 and 1972 in no way interfered with Mr. Hasfurther's ownership or use of the land."

As stated, Wagar owned the land in question from 1972 to 1977. In December of 1972, plaintiff-appellant Peter D. Lorang asked Wagar to grant a 50-foot right-of-way access across the property in question, but Wagar told Lorang that while Lorang might use the property for access, Wagar would not put any such permission in writing. Similarly, after the Hunts bought the property from Wagar in 1977, plaintiff-appellant Lorang asked them for a formal easement, but the Hunts also refused to give a written permission, although they

allowed Lorang to cross the property for a few years. Disputes began when Lorang came upon the Hunt property and found his access blocked. This action ensued.

The well-stated findings of the trial court are dispositive. They state:

"There is no question that the use of defendants' land initially began as a permissive use in 1951 and continued that way into the late 1950's. There is no question that plaintiff sought permission from defendants' predecessor in interest, Mr. Wagar, in 1972 and received that permission, and so the use is clearly permissive during the Wagar ownership. Plaintiff has not used the land for five years, since 1977 when defendants' ownership began, and so there can be no question that an easement could not have been acquired during defendants' ownership. That leaves the lengthy interval, starting in the late 1950's and running until 1972, during which time plaintiff would have had to acquire his easement by adverse use.

"It is plaintiff's contention that the permissive character of his use terminated upon the construction of the bridge and from that point forward his use automatically became adverse in nature and under a claim of right. The law does not support this contention. It is well established law that for a permissive use to become adverse or under a claim of right the claimant must do some unequivocal act which places the owner of the alleged servient tenement on notice that the character of the use has changed. The Supreme Court of Idaho stated this doctrine clearly in *Webster v. Magleby*, 98 Idaho 326, page 327, 563 P.2d 50, when the Court said,

A use begun under permission or license can be changed into one exercised as a claim of right (i.e. hostile and adverse) only after unequivocal conduct, giving the owner of the servient tenement notice of the hostility and adverseness of such claim.

The concept put forward by plaintiff, that a permissive use can self-expire and thereby become automatically adverse has simply not been accepted by the Courts. Appellate decisions upholding a finding of permissive use have cited facts in which permission was granted for a single use or a short period on one or two occasions and then use continued without the further seeking of permission. Even in these cases, involving a single grant or short period of permission, the Courts have consistently held that the user must give the owner of the servient tenement some unequivocal notice that the nature of the use has changed. Any other rule of law would work serious injustice and place upon the owner of land a tremendous responsibility to keep regranting permission without any indication that such was necessary. In the case at bar permission was sought and granted in 1951. Permission was again sought and granted in 1972. And yet, plaintiff claims that in the interim his use was adverse. This the law does not accept unless plaintiff undertook some course of action which was designed to place the owner of the servient tenement on notice that the use had changed character in the interim. There being no such notice or action in this case, plaintiff's claim for an easement must be denied."

■ Those findings of the trial court are sustained by the evidence and will not be disturbed on appeal. *Glenn v. Gotzinger*, 106 Idaho 109, 675 P.2d 824 (1984); *Idaho Falls Bonded Produce v. General Mills Restaurant Group, Inc.*, 105 Idaho 46, 665 P.2d 1056 (1983); I.R.C.P. 52(a). Lorang, nevertheless, urges that we conclude upon this record that Hasfurther should have somehow realized that Lorang's use of the property in 1957 and thereafter was with hostile intent, although clearly the use of the access by Lorang's father had always been with the cooperation and consent of Hasfurther. Absent unequivocal conduct giving the owner of the property notice of hostility and adverseness, we will not conclude that a use initiated with permission has somehow changed to one of hostility. Such a conclusion would tend to destroy

the public interest of encouraging amicable relationships between neighbors.

The decision of the trial court is affirmed. Costs and attorney's fees to respondents on appeal.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.