869 P.2d 554

SAVAGE LATERAL DITCH WATER USERS ASSOCIATION; George A. and Billie Pulley; George W. and Elizabeth Stephens; Thomas and Karen Helzer; Norman and Vicki Alicea; Charles W. and Twyla Jones; Ronald L. and Debra L. Jordan; Johnson E. Smith; John Savage; and Kenneth and Wanda Van Dorn, Plaintiffs–Respondents,

v.

Toni E. PULLEY, a single woman; and Jerry Pulley, Defendants–Appellants,

v.

SAND HOLLOW DITCH CO., LTD.; and Last Chance Ditch Company, Ltd., Third-party Defendants–Respondents.

No. 19616.

Supreme Court of Idaho,
Boise, February 1993 Term.

Oct. 20, 1993.

Rehearing Denied March 25, 1994.

Givens, Pursley, Webb & Huntley, Boise, for appellants. Robert C. Huntley, Jr., argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondents Savage Lateral Ditch Water Users Ass'n et al. Albert P. Barker, argued.

Louie Gorrono, Emmett, for respondents Sand Hollow Ditch Co., Ltd.

Park, Costello & Burkett, Caldwell, for respondents Van Dorn. Sergio A. Guitierrez, argued.

SCHILLING, Judge Pro Tem.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS.

Respondent Last Chance Ditch Company possesses water rights in the Payette River. Its water is distributed by irrigation canals and lateral ditches, one of which is called Sand Hollow Ditch. Respondent Sand Hollow Ditch Company is responsible for maintenance of some lateral canals flowing off of Sand Hollow Ditch, including the Savage Lateral Ditch. The Savage Lateral is located near the end of Sand Hollow Ditch, not far from where Sand Hollow Ditch empties back into the Payette River.

From as early as the 1930s, the Savage Lateral Ditch ran southwest near railroad tracks across the Van Dorn property and onto the Levers Estate (referred to herein as the "Pulley property"), within which it veered northwest toward George Pulley's property. At the point on the Pulley property in which the ditch turned northwest, another ditch called the Helzer Ditch originated and continued southwest onto the property of Thomas and Karen Helzer. From at least the 1940s, the Savage Lateral Ditch has been used to irrigate approximately 417 acres of farm and pasture land southwest of Emmett, Idaho.

In June of 1988, appellant Toni Pulley acquired the Pulley property: 150 acres of farm land near Emmett, Idaho, through which the Savage Lateral Ditch runs. Approximately eighty acres of the land is located north of the Savage Lateral Ditch; the remaining seventy acres are located south of that ditch. Toni Pulley orally leased this land to her father, appellant Jerry Pulley, in exchange for his payment of property taxes, irrigation water assessments and any improvements to the property.

In 1989, Jerry Pulley relocated the Savage Lateral Ditch as it ran through the Pulley property. Shortly after entering the Pulley property, the ditch was reconstructed to turn due north and run along the eastern boundary of the Pulley property (the western boundary of the Van Dorn property) until it reached the Dittman's property to the north. At that point, the relocated ditch again made a turn due west across the northern edge of the Pulley property until it reached the northeastern corner of George Pulley's property. The reconstructed ditch again turned, this time south along the western boundary of the Pulley property for a short distance, and then finally angled back into the original Savage Lateral Ditch as it entered the northeastern portion of George Pulley's land.

Jerry Pulley also leveled the lower seventy acres of the Pulley property, which destroyed the Helzer Ditch. The Helzer Ditch had not been used for irrigation of the Helzer property for the four years during which the Helzers owned the property.

Another lateral called the Dittman Ditch runs through the northern eighty acres of the Pulley property, and is used to irrigate the northern portion of that property. The lower seventy acres had been irrigated through use of the Savage Lateral.

During the 1989 irrigation season and after relocation of the Savage Lateral Ditch by Jerry Pulley, the downstream water users began to experience a decrease in the historic flow of water in the ditch. The downstream users were forced to increasingly rotate ditch use due to the decrease in flow. In May of 1990, seven users representing 322.3 of the 417 acres served by the Savage Lateral formed the Savage Lateral Ditch Water Users Association (SLDWUA). The SLDWUA filed for declaratory and injunctive relief against the appellants Pulley on June 29, 1990, alleging a violation of Idaho Code § 42–1207. The primary relief re-

quested by the Association and its users was that the Savage Lateral Ditch be returned to its original location and elevation as it ran through the Pulley property. The Helzers, as members of the SLDWUA, requested that the Helzer Ditch be returned to its original condition.

The Van Dorns joined in the complaint, also requesting injunctive relief as well as compensation for damages to their hay field during 1989 and 1990 allegedly caused by relocation of the ditch by Jerry Pulley.

Appellants Pulley brought a third-party complaint against Sand Hollow Ditch Company and Last Chance Ditch Company requesting injunctive and declaratory relief.

After a court trial, the trial court conducted a view of the property and walked the entire length of the Savage Lateral. The court issued its findings of fact, conclusions of law and judgments on June 4, 1991, ruling in favor of the respondents. The trial court held that the relocation and reconstruction of the Savage Lateral by Jerry Pulley, acting as agent of Toni Pulley, impeded the historic flow of water through the ditch in violation of I.C. § 42–1207. The court ordered that the Savage Lateral Ditch be relocated to its original location and elevation, that the Helzer Ditch be restored to its original condition, and that Toni and Jerry Pulley refrain from using water from the Savage Lateral in excess of their historic share based on irrigation of the southern seventy acres of their property.

The district court held that the respondents Van Dorn were entitled to damages for injury to their hay field in the amount of $6,204.45. Both SLDWUA and the Van Dorns were awarded costs as prevailing parties. The court further concluded that there was no factual basis for the appellants' third-party claims against Sand Hollow Ditch Company or Last Chance Ditch Company. It awarded both companies court costs and attorney's fees.

Appellants filed a Rule 59(e) motion to alter or amend the findings of fact and con-

clusions of law of the trial court on July 9, 1991. In support of this motion, they submitted the affidavits of Sherl Chapman and Jerry Pulley, which the court considered only with respect to contempt sanctions and the amount of time that the Pulleys would be given to comply with the injunction. The court denied appellants' motion.

Appellants now appeal from the trial court's findings of fact, conclusions of law and judgments, as well as its ruling on appellants' post-trial motion to alter or amend the judgment, raising the following issues:

(1) Was the permanent injunction improvidently issued because the plaintiffs did not prove their right to an injunction?

(2) Did the district court err by granting an injunction which unduly and unnecessarily infringes upon the appellants' rights?

(3) Did the district court err by refusing to consider, in the exercise of its continuing jurisdiction over the injunction, the affidavits of Sherl Chapman and Jerry Pulley submitted in support of appellants' motion to alter or amend the judgment?

(4) Did the district court err in denying appellants' demands for a jury trial on the issues concerning damages?

(5) Did the district court err in ruling that appellants had a duty to continue an easement for the transport of nine miner's inches of water to the Helzer property, when neither the Helzers nor their predecessor in interest had used the Savage Lateral to irrigate their land for twenty-one years?

(6) Did the district court err in ruling that appellants presented no factual basis for their third-party claims against Sand Hollow Ditch Company? [1]

Respondents SLDWUA and Sand Hollow Ditch Company have requested attorney fees on appeal.

■ Findings of fact cannot be set aside on appeal unless they are clearly erroneous, *i.e.* not supported by substantial, competent

---

1. Last Chance Ditch Company and appellants stipulated to the release of Last Chance as a party of the action on appeal, new trial, or any further proceedings in this case. *Stipulation between Last Chance Ditch Co., Ltd., and Jerry Pulley and Toni E. Pulley* (December 4, 1991).

evidence. *Rice v. Hill City Stock Yards, Co.,* 121 Idaho 576, 826 P.2d 1288 (1992); *Jenkins v. State, Dept. of Water Resources,* 103 Idaho 384, 389, 647 P.2d 1256, 1261 (1982). An appellate court cannot substitute its opinion of witness' credibility for that of the trier of fact. *Alumet v. Bear Lake Grazing Co.,* 119 Idaho 946, 949, 812 P.2d 253, 256 (1991). This standard reflects the deference to be afforded a trial court's unique opportunity to assess and weigh the credibility of the witnesses who appear before it. *State v. Tierney,* 109 Idaho 474, 476, 708 P.2d 879, 881 (1985).

■ It is only when an issue is one of law that the Court exercises free review of the trial court's decision. *Kawai Farms, Inc. v. Longstreet,* 121 Idaho 610, 826 P.2d 1322 (1992). This appeal raises both issues of fact and of law.

## II.

### PROPRIETY OF INJUNCTIVE RELIEF

■ The decision to grant injunctive relief rests with the sound discretion of the trial court. *O'Boskey v. First Fed. Savs. & Loan Ass'n,* 112 Idaho 1002, 1007, 739 P.2d 301, 305 (1987); *Harris v. Cassia County,* 106 Idaho 513, 517, 681 P.2d 988, 992 (1984). Appellants argue that there are two primary reasons why the injunction issued by the district court was improper: (1) the plaintiffs' failure to prove the exact amount of water to which they were entitled prevented them from obtaining injunctive relief under I.C. § 42–1207; and (2) the plaintiffs failed to meet their burden of proving that "irreparable harm" would result absent issuance of an injunction. Appellants' arguments concentrate primarily on one injury caused the plaintiffs: the impedance of water flow.

Idaho Code § 42–1207 provides that:
Where any lateral ditch has heretofore been, or may hereafter be, constructed across the lands of another, the person or persons owning or controlling the said land shall have the right at their own expense to change said lateral ditch to any other part of said land, *but such change must be made in such a manner as not to impede the flow of the water therein, or to other-*

*wise injure any person or persons using or interested in such lateral ditch.* (Emphasis supplied.)

The statute is broadly worded and does not specify that it is only the amount of water to which downstream users are entitled under the water laws of this state which may not be impeded. This Court has previously held that "in this state a ditch right for the conveyance of water is recognized as a property right apart from and independent of the right to the use of the water conveyed therein." *Simonson v. Moon,* 72 Idaho 39, 47, 237 P.2d 93, 98 (1951).

■ This Court generally agrees that a decrease in the amount of water to which the plaintiffs were entitled, measured in terms of miners' inches or c.f.s., may be the *best* method of establishing that the flow has been impeded, but does not agree that the authority cited by the appellants establishes that it is the *only* method to prove this occurrence. Ditch rights are determined by the flow of water historically conveyed through the ditch and not necessarily by the amount of water to which its users are entitled under the water laws of this state. *Simonson,* 72 Idaho at 47, 237 P.2d at 98.

A review of the case precedent addressing I.C. § 42–1207, supports these conclusions. In *Simonson v. Moon,* the Court addressed the nature of this statute:

Prior to the enactment of this statute the right of the owner of the servient tenement to change the place or location of an easement did not exist. (Citations omitted.) *It follows that the statute must be fully complied with by one seeking to exercise the right it confers. The burden was on the plaintiffs to show that they provided the defendants Moon with another ditch which would convey the water, which they had heretofore conveyed through the branch B–E, to the point of delivery at E without impeding the flow thereof, and without injury either to the defendants Moon or the defendants Wells. Tomchak v. Harris,* 54 Idaho 448, 32 P.2d 1025. (Emphasis supplied.)

*Simonson,* 72 Idaho at 45–46, 237 P.2d at 97. The burden thus rested with appellants to

prove that they had fully complied with the language of Section 42–1207.

Appellants rely on *Last Chance Ditch Co. v. Sawyer*, 35 Idaho 61, 204 P. 654 (1922). In that case, the ditch company sued 89 irrigators to prevent them from dumping waste water into the ditch company's irrigation canal. It was alleged that, because the waste water contained large amounts of sand and silt, it clogged up the canal. The irrigators contended that they had obtained a prescriptive easement to use the canal for dumping waste water. Thus, this case did not address the issue of modification or reconstruction of a lateral ditch, but instead addressed improper use of a ditch by non-members of the ditch company. The Court held that

> the burden is on the party claiming the right by prescription to show the extent and the amount of his use and of the right claimed.... In controversies such as the one at bar, the law does not require those claiming a prescriptive right to prove the extent of the right to a nicety, but the burden is upon them to show with substantial certainty the extent of the easement which they have enjoyed for a period of at least five years.

35 Idaho at 68, 204 P. at 655. The ultimate conclusion was that only those defendants who proved that they had dumped a specific amount of waste water to flow into the canal had sufficiently proven the right to a prescriptive easement. *Id.* at 68–69, 204 P. at 655.

■ It is undeniable that water and ditch rights are tied together in that the ditch carries the water. But they are not the same. It would be vital in a *water rights controversy* to establish exactly how much water to which one is entitled. In this case, the right to use the ditch is already established—and has not been contested by the appellants. This difference distinguishes *Sawyer* from the case before us.

Appellants' alternative argument is that there was insufficient evidence presented at trial proving that irreparable harm would result without injunctive relief. This argument represents an attempt to dispute the factual findings of the trial court with regard to what had caused the impedance of the flow

of water and other injuries. The district court expressly found that:

> 6. ... During 1989 and 1990, this new ditch impeded, and continues to impede, the usual flow of water to SLD [Savage Lateral Ditch] users west of [Toni Pulley's] land. As a direct result of [Jerry Pulley's] acts, the individual users do not receive the same amounts of water they had historically received prior to this new ditch, and Helzers are unable to receive any water from the SLD.... In 1990, wash outs between these two ditches [SLD and the Dittman ditch] occurred. This new ditch is constructed of silty loamy soil, which is not suitable for ditch lining. Access to clean this new ditch with equipment is more difficult. This new ditch is longer and increases the users' maintenance burdens.
>
> 7. ...This new ditch restricts the flow of SLD so as to require a rotation system for downstream users.

*Findings of Fact, Conclusions of Law and Judgments* at 4–5 (June 4, 1991).

■ After reviewing the transcript on appeal, this Court concludes that the district court's findings are supported by substantial, competent, though conflicting, evidence. An interference with the historic flow of water enjoyed by its users, which occurs following the relocation and reconstruction of a lateral ditch, causes irreparable harm to those who rely on that ditch to provide them with water to irrigate their land.

■ Furthermore, there was other evidence of injury beyond impedance of flow, including extensive testimony supporting the fact that maintenance of the relocated Savage Lateral Ditch on the Pulley property was rendered much more difficult and time-consuming as a result of its relocation. An increased maintenance burden caused other users is an injury prohibited under I.C. § 42–1207; *see Tomchak v. Harris,* 54 Idaho 448, 32 P.2d 1025 (1934). Although a minor increase in the length of a ditch or other conditions which negligibly increase its maintenance are insufficient injuries by themselves to constitute a violation of the statute, when such burdens are accompanied by forced rotation of ditch use or other inconve-

nience, the combined injuries are sufficient. *See Simonson v. Moon*, 72 Idaho at 46, 237 P.2d at 97. When relocation of a ditch forces its users to rotate their use of the ditch with other users, this is an injury to them within the meaning of the statute. *Simonson v. Moon*.

The granting of injunctive relief by the district court, in light of the diverse injuries found to have been caused by the relocation of the Savage Lateral, was not an abuse of discretion. Resolving conflicts in evidence and choosing between permissible inferences as to the cause of these injuries is a task uniquely committed to the trial court. *Allen v. Burggraf Construction Co.*, 106 Idaho 451, 453, 680 P.2d 873, 875 (Ct.App.1984) (court's inference that water shortage resulted from construction defects in new ditch was permissible based on evidence).

## III.

## EXTENT OF INJUNCTIVE RELIEF

Appellants allege that the trial court, in ordering relocation of the Savage Lateral, failed to properly balance the appellants' statutory right to move the ditch against the plaintiffs' injuries. There was little evidence presented at trial regarding how or if the relocated ditch could be improved in order to solve the problems it was found to have caused. Appellants' primary defense throughout the trial was that the relocated ditch did not in fact cause any injuries or impede the flow of water, so no relief was warranted. There was substantial evidence in the record that the location chosen by Jerry Pulley to reconstruct the Savage Lateral was unwise in light of its elevation, its proximity to the Dittman ditch,[2] the consistency of the soil in that area of the Pulley property,[3] the number of 90-degree turns in the ditch, and its increased length. Thus, there were substantial reasons for the trial court to order that relocation of the ditch.

There is a historical tenor to where the trial court chose to relocate this irrigation ditch. If the original ditch suited all interested persons, it is logical and practical to restore the ditch at its original location. That is, history tells us that the original ditch was located on that part of the Pulley property for a reason. Secondly, the language of I.C. § 42–1207 suggests that a landowner can relocate and reconstruct a lateral ditch on his or her land *unless* it impedes water flow or causes other injuries to those who rely on it for irrigation purposes:

> [B]ut such change must be made in such a manner as not to impede the flow of water therein, or otherwise to injure any person or persons using or interested in such lateral ditch.

The injunction as it stands properly puts the parties back where they were before this controversy, *i.e.*, returns them to the status quo. The district court did not abuse its discretion regarding the extent of injunctive relief.

## IV.

## POST–TRIAL AFFIDAVITS

Appellants argue on appeal that the trial court erred in failing to exercise its continuing jurisdiction, in refusing to consider the Chapman and Pulley affidavits and in denying Appellant's Motion to Alter or Amend Judgment. The issue of a trial court's continuing jurisdiction is raised for the first time on appeal, and will not be considered by this Court. *Kinsela v. State Dep't of Fin.*, 117 Idaho 632, 790 P.2d 1388 (1990); *Sandpoint Convalescent Servs., Inc. v. Idaho Dep't of Health & Welfare*, 114 Idaho 281, 756 P.2d 398 (1988).

With regard to Rule 59(e), the affidavit of Sherl Chapman filed on July 17, 1991, essentially reiterated and expanded upon his expert trial testimony regarding the sufficiency

---

2. There was substantial evidence presented that this proximity contributed to subbing (where the water seeps into the earth surrounding the ditch rather than flowing through it) and wash-outs (where the water punches holes in the ditch and flows into another ditch).

3. There was evidence that the soil was composed of elements inadequate for construction of an irrigation ditch, which impeded the flow of water as the ditch was neither lined nor piped.

of the relocated Savage Lateral Ditch. Jerry Pulley's affidavit, filed the same day, explained that he had, since the trial court's final judgment in the case, run a sub-lateral ditch from the relocated Savage Lateral to the Helzer property and had cleaned the relocated ditch which allegedly lowered its elevation.

Respondent SLDWUA moved to strike these affidavits on the ground that they were inadmissible under either I.R.C.P. 59(e) or 60(b). There is apparently no dispute between the parties that they stipulated on the record that the affidavits submitted by appellants would not be considered by the trial court in support of their motion to alter or amend the judgment. A stipulation between counsel entered upon the minutes of the court is generally deemed binding upon the parties. *See* I.C. § 3–202(1); *Singleton v. Pichon,* 102 Idaho 588, 589, 635 P.2d 254, 255 (1981). Therefore, appellants are foreclosed from contesting the limited use of the two affidavits on appeal.

Alternatively, under Rule 59(e), a movant is not entitled to offer additional evidence beyond that introduced at trial, *Marcher v. Butler,* 113 Idaho 867, 870, 749 P.2d 486, 489 (1988):

> Because this motion attempts to present new information that the trial court did not have before it when rendering its decision granting summary judgment, the motion must be considered a motion for relief from judgment under I.R.C.P. 60(b).

*See also, Lowe v. Lym,* 103 Idaho 259, 263, 646 P.2d 1030, 1034 (Ct.App.1982). Even if this motion was treated as one properly brought under Rule 60(b), there is no evidence in the record that appellants demonstrated good cause for admission nor did the appellants specify any grounds for relief. *First Bank & Trust of Idaho v. Parker Bros.,* 112 Idaho 30, 32, 730 P.2d 950, 952 (1986).

These affidavits were not "newly discovered" evidence in the usual sense under Rule 60(b)(2), *i.e.,* they did not disclose information in existence at the time of trial but not discoverable with due diligence, nor did they present other reasons justifying the relief requested. *See* I.R.C.P. 60(b)(6). Appellants only ground for relief from the injunction is that Jerry Pulley, rather than obey the orders of the trial court, built a new sub-lateral to the Helzer property and cleaned the relocated ditch. This cannot be proper grounds for relief. If that were true, parties could in effect alter the judgment by crafting their own solution to the problems caused by their conduct—a function that the trial court was requested to perform by all parties to this litigation. The trial court was correct in refusing to consider the affidavits submitted by the appellants in support of their motion.

## V.

## RIGHT TO JURY TRIAL

Appellants argue that the claims involving the cause or causes for the flooding of the Van Dorn property, which resulted in the crop damage, should have been tried by a jury because they involve legal issues. The Van Dorns' Complaint not only requested injunctive and declaratory relief, but also compensatory damages. Jerry Pulley's Answer, Counterclaim and Third–Party Claim filed on February 11, 1991, alleged that the contributory negligence of the Van Dorns was an affirmative defense to the damages requested. There is little question that the issue of damages caused by Jerry Pulley's conduct is a legal one.[4]

This aspect of the appeal has no effect on the judgments in favor of respondents SLDWUA or Sand Hollow Ditch Company. Their claims were all equitable in nature, so no right to jury trial attached. *See Idaho First Nat'l Bank v. David Steed &*

---

4. It would appear that a violation of Idaho Code § 42–1207 sounds in tort. The statute creates a duty on the part of the appellants, when modifying or relocating a lateral ditch, to make sure that they do not harm persons interested in the ditch or impede the flow of water therein as a result. The plaintiffs still had to establish at trial that this duty was breached, that damage resulted from the breach and that the appellants caused that damage. *See also, Brizendine v. Nampa Meridian Irrigation Dist.,* 97 Idaho 580, 586, 548 P.2d 80, 86 (1976) (I.C. § 42–1204 imposes a duty on irrigation ditch owners to maintain ditch).

*Assocs., Inc.,* 121 Idaho 356, 825 P.2d 79 (1992). Although Jerry Pulley's counterclaim against SLDWUA alleged that SLDWUA's failure to properly maintain the relocated ditch contributed to the Van Dorns' damages, it did not request legal relief.

The Van Dorns proffer three basic arguments in support of their claim that the appellants had no right to a jury trial on damages:

(1) Appellants' original attorney, Paul Westberg, waived the right to a jury trial as to all issues raised in the complaint during a telephonic scheduling conference on November 26, 1990;

(2) Appellants waived their right to a jury trial at the pretrial conference on March 1, 1991;

(3) Respondents made a clear showing that an "imperative circumstance" existed which would cause them irreparable harm if appellants were granted a jury trial on the legal issues.

The relevant facts are stated in the trial court's Memorandum Decision and Order at 5–6 (September 23, 1991):

4. On November 26, 1990, a telephone scheduling conference was held in this action in which Paul Westberg, attorney at law, of Boise, Idaho, represented Defendants [Toni Pulley] and [Jerry Pulley], *and at which all parties agreed that this case could be set for a two (2) day court trial;* as a result of this conference, this district judge filed an order that set this case for a two (2) day court trial. . . .

5. On February 11, 1991, [Toni Pulley] filed a notice to substitute Bry Berhmann, attorney at law, Emmett, Idaho, as her attorney, and filed an answer, counterclaim and third-party claim and made a demand for a jury trial; on that same date, [Jerry Pulley], appeared pro se and filed an answer, counterclaim and third-party claim and *made a demand for a jury trial,* but sought equitable relief as to the easement across [Toni Pulley's] property and as to the water shares issued by [Sand Hollow Ditch Company] and [Last Chance Ditch Company].

6. On March 1, 1991, at the pre-trial conference Berhmann, on the record, waived [Toni Pulley's] right to a jury trial, but [Jerry Pulley] did not waive his right.

7. On March 8, 1991, this district judge filed a pre-trial conference order that provided in part: "G. . . . Court will not bifurcate Plaintiff–Defendant claims from claims from third parties."

8. *On May 1, 1991, the first day of the trial [Jerry Pulley] raised the issue of a jury trial, and this district judge denied it.*

9. SLDWUA, the individual plaintiffs and [Kenneth and Wanda Van Dorn] have made a showing of "imperative circumstances" that indicates they would be deprived of their equitable relief if the legal issues were tried to a jury; each of these plaintiffs made a showing at trial by clear and convincing evidence that each would suffer irreparable harm if equitable relief was not granted them by the district court;

10. [Jerry Pulley], at the trial, presented no evidence to show he had suffered any damages relating to his counterclaim or his third-party claim; [Jerry Pulley], at the trial, presented no evidence to show he was entitled to any legal relief of any kind. (Emphasis supplied.)

The district court stated two alternate grounds for denying the right to a jury trial on the damages issues. First, both defendants waived their right to a jury trial as to all plaintiffs' claims at the telephone scheduling conference on November 26, 1990, through their original attorney of record, Paul Westberg (the "Westberg stipulation"). Furthermore, Toni Pulley again waived this right at the pretrial conference.

Second, Jerry Pulley requested equitable relief on claims which could not be separated from the trial of his legal claims for damages.

I.R.C.P. 38(a) and (b) provide as follows:

**Rule 38(a). Jury trial of right—Right preserved.**—The right of trial by jury as declared by the Constitution or as given by statute of the state of Idaho shall be preserved to the parties inviolate. . . .

**Rule 38(b). Demand.**—Any party may demand a trial by jury of any issue triable

of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten (10) days after the service of the last pleading directed to such issue. . . .

This right can be waived under I.R.C.P. 39(a):

**Trial by jury or by the court—By jury.—** When trial by jury has been demanded as provided in Rule 38, the actions shall be designated upon the register of actions as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered into the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right to trial by jury of some or all of those issues does not exist. (Emphasis added.)

In this case, there are no minutes of the telephone scheduling conference in November which respondents allege evidence the "Westberg stipulation" that all issues would be tried before the court. The scheduling order filed thereafter by the court, setting a date for a court trial, is not the equivalent of a stipulation by the parties.

■ The "Westberg stipulation" occurred prior to the filing of the appellants' answers and, thus, prior to their demands for a jury trial. Rule 39(a) provides that, *once a proper and timely demand has been made,* the trial is by jury in the absence of a waiver under the conditions so stated in the rule. *See also, Neal v. Drainage Dist. No. 2,* 42 Idaho 624, 248 P. 22 (1926). The alleged stipulation by telephone conference does not constitute a valid waiver of the right to a jury trial by the parties because it was not entered into the record.

■ However, Toni Pulley did validly waive her right to a jury trial at the pretrial conference in March of 1991. This waiver was by "an oral stipulation . . . entered into

the record" as required under I.R.C.P. 39(a). The Van Dorns argue that Toni Pulley's waiver at the pretrial conference constituted an implied waiver of Jerry Pulley's right as Jerry Pulley was not the real party in interest under I.R.C.P. 17(a), but Toni Pulley's agent.[5]

Jerry Pulley remained a separate party throughout the case. Rules 38(a), (b) and 39(a) all use the term "party" in declaring the right to a jury trial afforded under the Idaho Constitution. Even if Jerry Pulley were Toni Pulley's "agent," Rule 39 makes it clear that it is a "party" or a party's attorney who is entitled to waive that party's right to a jury trial.

The remaining question, then, is whether the district court properly found that the right to trial by jury did not exist under the facts and circumstances of this case. *See* I.R.C.P. 39(a). In *David Steed & Assocs., Inc. v. Young,* 115 Idaho 247, 766 P.2d 717 (1988), *appeal after remand sub nom. Idaho First Nat'l Bank v. David Steed and Assocs., Inc.,* 121 Idaho 356, 825 P.2d 79 (1992) [hereinafter *Steed I and Steed II* ], two members of the Idaho Supreme Court, abided by the holding of the United States Supreme Court in *Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), by quoting *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44, 48 (1962):

[W]here both legal and equitable issues are presented in a single case, "only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." That holding, of course, applies whether the trial judge chooses to characterize the legal issues presented as "incidental" to equitable issues or not. Consequently . . . *Beacon Theaters* requires that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury.

---

5. The trial court did find that Jerry Pulley acted as Toni's agent in constructing the relocated ditch, *see Findings of Fact, Conclusions of Law* *and Judgment,* but this has no effect on Jerry Pulley's status as a "party" to this action.

Justice Johnson filed a special concurrence in *Steed I*, adopting a more limited holding which did not rely on the "imperative circumstances" language of *Beacon Theaters,* but instead on Idaho case precedent governing compulsory counterclaims in mortgage foreclosure actions. 115 Idaho at 251–53, 766 P.2d at 721–22. Therefore, that portion of *Steed I* adopting the "imperative circumstances" test did not obtain a majority of the court.

In a more recent decision, *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 824 P.2d 841 (1991), this Court addressed a situation similar to the present one, in the context of a mortgage foreclosure action:

> The borrowers' counterclaims depend, to a greater or lesser degree, upon the determination of the rights and duties created by the original loan transaction and the trial court's findings of fact and conclusions of law on the equitable issues. In making these findings of fact, the judge may defer to, but is not bound by, findings made on similar factual issues by the jury on any legal conclusion. *State ex rel. McAdams v. District Court,* 105 N.M. 95, 728 P.2d 1364, 1366 (1986) ("[W]hen legal and equitable issues are joined in a lawsuit the trial court should first decide the equitable issues, and then if any independent issues remain, those issues may be tried by the jury upon appropriate request."); *Penmont Enterprises, Inc. v. Dysart,* 340 So.2d 1285 (Fla. App.1977); *Jaffe v. Albertson Co.,* 243 Cal. App.2d 592, 53 Cal.Rptr. 25, 36 (1966) ("[W]hen a case involves both legal and equitable issues the court may in its discretion decide the equitable issues first. If the decision as to the equitable issues is such as is determinative of the legal issues a jury trial as to the latter is obviated. If not, the jury trial as to the remaining issues will follow.")

121 Idaho at 290, 824 P.2d at 865. This aspect of *Bliss Valley* obtained a majority. Under *Bliss Valley,* there is no merit to Jerry Pulley's argument that he was entitled to a jury trial on those findings of fact and conclusions of law which the trial court rendered as a necessary part of its decision awarding respondents an injunction because appellants had violated the requirements of I.C. § 42–1207. The trial court stated in finding numbers six and eight:

> 6. In the Spring of 1989, [Jerry Pulley], while acting within the scope of his agency for [Toni Pulley], intentionally relocated and changed that portion of [Savage Lateral Ditch] from its entry on [Toni Pulley's] land to where it enters [George Pulley's] land.... This new ditch is higher, and runs above the level of [Kenneth and Wanda Van Dorn's] 14.8 acre field and above [Toni Pulley's] south field.

> ....

> 8. [Jerry Pulley], while acting within the scope of his agency for [Toni Pulley], intentionally acted and/or failed to use due care to relocate and construct this new ditch so that [Jerry Pulley's] acts and/or omissions caused water seepage into [Kenneth and Wanda Van Dorn's] 14.8 acre hay field and damaged his [Kenneth Van Dorn's] hay crop during 1989 and 1990. After [Jerry Pulley] constructed this new ditch, and put water into it, water seeped from it into [Kenneth and Wanda Van Dorn's] 14.8 acre field and caused the field to develop alkali spots that covered 5 acres of the hay field.

*See Findings of Fact, Conclusions of Law and Judgments,* at 4–5, 6, 8. These findings and conclusions regarding the equitable issues were determinative of certain legal issues, obviating in part the need for a jury trial on those issues. Therefore, there is no right under Idaho law to have a jury re-determine those issues.

However, the trial court also made certain findings and reached certain conclusions, (finding nos. 8 and 9, and concl. no. 4), which violated Jerry Pulley's right to a jury trial on the independent legal issues remaining:

> 8. ... Damages for 1991 are too speculative to determine. As a direct result of [Jerry Pulley's] acts and/or omissions, [Kenneth and Wanda Van Dorn] sustained these total damages:

a. 1989 crop loss—15 tons @ $ 85.00 = $1275.00

b. 1990 crop loss—20 tons @ $ 85.00 = $1700.00

c. Rehabilitation costs: $645.89 for 5 acres = $3229.45

Total = $6204.45

9. [Kenneth and Wanda Van Dorn's] acts and/or omissions did not contribute toward these damages. . . .

. . . .

4. Plaintiffs [Kenneth and Wanda Van Dorn] are entitled to recover damages against [Toni Pulley] and [Jerry Pulley] in the sum of $6204.45.

*Id.* at 6. As these rulings were not determinative of the equitable issues presented the trial court, a jury trial on the remaining issues of the amount of damages suffered by the respondents Van Dorn and whether any negligent acts or omissions of the Van Dorns contributed to those damages should have been conducted.

■ The proper procedure for the trial court to follow on remand is to instruct the jury that its findings of fact and conclusions of law regarding the negligent construction and relocation of the Savage Lateral Ditch, *see infra* at 20, are conclusive on the issue of Jerry Pulley's negligence, acting with the consent of and as agent of Toni Pulley. The jury should further be instructed to determine the amount of damages caused by that negligent conduct, and to compare that negligence to the conduct of the Van Dorns by assessing percentages of negligence to appellants Jerry and Toni Pulley and to the respondents Van Dorn.

As this Court commented in *Steed I:*

Our forefathers wisely provided in Article 1, Section 7 of the Idaho Constitution: "The right to trial by jury shall remain inviolate . . ." They so provided because they recognized that the jury system is the single most important guardian of the people's right to be protected from oppressive and overreaching government.

115 Idaho at 248, 766 P.2d at 718. The trial court's decision to deny Jerry Pulley his right to trial by jury on the issues of the amount of damages suffered by the respondents Van Dorn and whether any acts or omissions of the Van Dorns contributed to those damages, in the absence of an affirmative showing of waiver, was in error.

## VI.

## THE HELZER DITCH

Appellants argue that Idaho Code § 42–222(2) establishes that the Helzers forfeited all ditch rights because neither they nor their predecessor in interest made beneficial use of the water for over five years. This argument is raised for the first time on appeal.

■ The appellants' defense before the district court was that the Helzer ditch had been abandoned by nonuse. Abandonment of any right is dependent upon a finding of an intent to abandon evidenced by a clear, unequivocal and decisive act of the alleged abandoning party. *Wagoner v. Jeffery,* 66 Idaho 455, 460, 162 P.2d 400, 402 (1945). The trial court found that the Helzers did not intend to abandon their rights in the ditch, and ordered that it be restored. This finding and subsequent order has not been challenged on appeal.

■ This Court has held that statutory forfeiture is a legal issue distinct from that of abandonment, with different elements. *Jenkins v. State Dep't of Water Resources,* 103 Idaho 384, 647 P.2d 1256 (1982) (forfeiture is statutory procedure but actual abandonment can occur outside statutory requirements, as it arises out of common law); *see also, McAtee v. Faulkner Land & Livestock, Inc.,* 113 Idaho 393, 744 P.2d 121 (Ct.App.1987). Since statutory forfeiture is a new issue never raised in the trial court, this Court will not consider it. *Kinsela v. State Dep't of Fin.,* 117 Idaho 632, 790 P.2d 1388 (1990); *Sandpoint Convalescent Servs., Inc. v. Idaho Dep't of Health & Welfare,* 114 Idaho 281, 756 P.2d 398 (1988).

## VII.

## THIRD–PARTY CLAIMS

Appellants attempt to reargue the facts presented to the district court regarding whether or not Sand Hollow Ditch Company was negligent in failing to install a weir to

regulate the amount of water flowing through the ditch, and in issuing more shares of stock in its company than there was water allocated to it. There is no evidence in the record that. Sand Hollow Ditch Company issued more shares than it should have.[6]

In addition, there was no causal link proven between this allegation of negligence and any damage caused to plaintiffs. Appellants had the burden of proving negligent conduct on the part of Sand Hollow which proximately caused the damages. *Harper v. Hoffman,* 95 Idaho 933, 935, 523 P.2d 536, 538 (1974). In fact, appellants did not request that Sand Hollow be asked to contribute its share of the damages it allegedly caused the Van Dorns—their only claim was for injunctive relief.

 Nor does the law support appellants' claims. In *Simonson v. Moon,* 72 Idaho at 47, 237 P.2d at 98, the Court held that:

> The [district] court was also in error in requiring the defendants Wells and Moon ... to confine their use [of the ditch] to the number of inches of water which their respective shares in the canal company represent.... From the record here it appears that the method of distribution employed by this company and its users provides the user with a larger flow of water, when available, than his shares represent. This enables him to complete his current irrigation in a comparatively short time, after which the water is shut off. Under ordinary conditions this method results in better irrigation of the crops, and with less waste of water, than can be accomplished with a smaller stream of continuous flow or over a longer period. Therefore, the court should not limit the defendants to the number of inches of flow represented by their shares in the canal company.

In a like manner, the record establishes that Sand Hollow Ditch Company also operates on a "demand system" which allows users at times to irrigate with a larger flow of water than their shares in the company represent. There was also evidence that some users

need less water than their shares represent. There is nothing in Idaho law to support the argument that this system is somehow unlawful or warrants injunctive remedy.

 A similar conclusion can be reached with regard to the allegation that the lack of a measuring weir by Sand Hollow Ditch Company was unlawful. *See* I.C. § 42–903. There is very little in the record regarding the practices of Sand Hollow Ditch Company, and nothing which supports the third-party claim that the absence of a weir caused damage to the Van Dorns' crops. Section 42–903 is inapplicable to the ditch system under which Sand Hollow operates. It is Last Chance Ditch Company which owns the water distributed through Sand Hollow Lateral; Sand Hollow does not charge a fixed annual fee for the delivery of water. The trial court was correct in determining that appellants had failed to maintain their burden of proof on their third-party claims.

 Respondent Sand Hollow Ditch Company requested an award of attorney fees from the trial court. In order to award fees, the trial court has to find that the action was brought or defended frivolously, unreasonably or without foundation. I.R.C.P. 54(e)(1); I.C. § 12–121; *Golder v. Golder,* 110 Idaho 57, 61, 714 P.2d 26, 30 (1986). The district court expressly found that the third-party claims against Sand Hollow were pursued without foundation. An award of fees under I.R.C.P. 54(e)(1) and I.C. § 12–121, is subject to reversal for an abuse of discretion by the district court. *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). When an exercise of discretion is involved, an appellate court conducts a three-step analysis: (1) whether the trial court properly perceived the issue as one of discretion; (2) whether that court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by the exercise of reason. *Sun Valley Shopping Center v. Idaho*

---

6. The only evidence in this regard related to Last Chance Ditch Company which is no longer a party on appeal.

*Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

There is no question that the trial court perceived the award of attorney fees to be one of discretion. This Court can discern no abuse of discretion in the court's decision. The meager nature of the evidence at trial regarding the negligence of Sand Hollow Ditch Company, the failure to request legal relief consonant with allegations of negligence, and the absence of a causal connection between Sand Hollow's conduct and the Van Dorns' damages, all support the reasonableness of the decision made by the trial court.

## VIII.

### ATTORNEY FEES ON APPEAL

Respondents SLDWUA and Sand Hollow Ditch Company properly raised as an issue the award of attorney fees on appeal. Where an appeal is brought frivolously, unreasonably and without foundation, attorney fees may be awarded on appeal. *Keller v. Rogstad,* 112 Idaho 484, 733 P.2d 705 (1987); I.C. § 12–121. Appellants' appeal of the denial of their third-party claims represents nothing more than a disagreement with the district court's conclusions based on conflicting evidence. In addition, the law in this area regarding alleged liability of Sand Hollow Ditch Company is well-settled. *See Simonson v. Moon,* 72 Idaho 39, 237 P.2d 93 (1951). Under these circumstances, Sand Hollow Ditch Company is entitled to attorneys' fees on appeal. *See Johnson v. Edwards,* 113 Idaho 660, 662, 747 P.2d 69, 71 (1987).

Where an appeal presents a genuine issue of law, fact or discretion for review, we will not award attorney fees on appeal. *Maslen v. Maslen,* 121 Idaho 85, 822 P.2d 982 (1991); *Spencer v. Idaho First Nat'l Bank,* 106 Idaho 316, 678 P.2d 108 (Ct.App. 1984). The appeal regarding the declaratory and injunctive relief granted SLDWUA presented genuine issues of law and of discretion. This Court therefore declines to award attorney fees on appeal to SLDWUA.

## IX.

### CONCLUSION

We affirm the trial court's findings of fact, conclusions of law and judgments, with regard to the equitable claims of the parties.

We vacate the trial court's findings of fact, conclusions of law and judgment regarding only those findings and conclusions addressing the amount of compensatory damages suffered by the respondents Van Dorn and whether any negligent acts or omissions of the Van Dorns contributed to those damages. The case is hereby remanded to the trial court for a jury trial on those issues consistent with this opinion.

Costs and attorney fees to respondent Sand Hollow Ditch Company. Costs awarded to respondents Savage Lateral Ditch Company and its members who are parties herein. No costs or attorney fees awarded to respondents Kenneth and Wanda Van Dorn or appellants Toni and Jerry Pulley on appeal.

BISTLINE, JOHNSON and TROUT, JJ., and SWANSTROM, J. (Pro Tem.), concur.