953 P.2d 588

**Kenneth H. HUNTER, Jr.,
Plaintiff–Respondent,**

v.

**Denny E. SHIELDS and Aleatha F. Shields, husband and wife, and Timothy A. Shields, Defendants–Appellants.**

**No. 22738.**

Supreme Court of Idaho,
Lewiston, October 1997 Term.

Feb. 26, 1998.

Cooke, Lamanna, Smith, Cogswell & Elliott, Priest River, for defendants-appellants. Thomas E. Cooke argued.

James H. Paulsen, Sandpoint, for plaintiff-respondent.

SILAK, Justice.

This is an appeal from the district court's order to quiet title in the respondent's property and estop the appellants from further asserting any adverse claims against the property. The appellants argue that they have a right to use an existing road under the theory of easement by prescription. We affirm the decision of the district court.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Appellants Denny Shields, Aleatha Shields and Timothy Shields (hereinafter collectively "the Shields") claim a prescriptive easement over the Allen Road to access a piece of property (the "dominant estate") in Bonner County near the Pack River. Denny and Aleatha Shields owned the dominant estate from 1950 to 1985. In 1985, Denny and Aleatha Shields quitclaimed the property to Timothy Shields, their son. Timothy Shields currently owns the property. The respondent, Kenneth H. Hunter, Jr., ("Hunter") purchased a piece of property (the "servient estate") in 1992, from Morris who had purchased the property from Clements and Arlene Yeakle. Arlene Yeakle is the sister of Denny Shields. The servient estate is crossed by the Allen Road.

The servient estate was originally owned by the Lynchs until 1944, then by the Meigs until 1952, then by the Yeakles until 1990, when they conveyed the property to Morris who subsequently conveyed the property to Hunter in April of 1991.

Old Idaho Highway No. 3 crosses the servient estate and connects with the Allen Road. This Old Highway fell out of general use in about 1930 when the State of Idaho rerouted the highway to the south.

The Allen Road was originally constructed in the mid–1930s by one George Allen ("Allen") to access a cabin owned by Allen. When Allen constructed the road, the servient estate was owned by the Lynchs. After the Allen Road was built, Denny Shields used the road to visit and assist Allen with work on his property. In 1943, Allen moved away and gave the Shields the right to use his pasture until he returned.

The Shields used the Allen pasture until 1950 when Denny and Aleatha Shields purchased lots 2, 3, and 4 of Section 30, Township 58 North, Range 1 East, of the Boise Meridian, lying east and north of the Pack River. This property is north of the servient estate. Denny Shields also leased some government land, adjacent to the Allen property, which was used for grazing purposes since the mid–1940s. The Shields used the Old Highway No. 3 to the Allen Road to access their property and the leased government property to graze cattle between May and October of each year. The Shields also used the Allen Road to access their property to gather wood, repair fences and for hunting. Express permission was never given to Denny Shields to use the road.

In 1952, the Yeakles purchased the servient estate. From 1960 until 1989, Denny Shields leased a portion of the servient estate from the Yeakles to pasture cattle. While the Yeakles owned the property, they allowed Denny Shields to construct a loading chute on their land where the Allen Road intersects Old Highway No. 3. During this time, the use of the road by the Shields did not interfere with the Yeakles' use. Both the Yeakles and the Shields maintained the Allen Road.

Sometime in the 1950s or 1960s, the Allen Road was relocated 600 yards closer to the Pack River by a logger named Waggoner with the permission of the Yeakles. After the Allen Road was relocated, it still crossed the servient estate. The Shields did not assist in relocating the road, but continued to use the road after it was relocated.

When the dominant estate was quitclaimed to Timothy Shields in 1985, he continued using the Allen Road to access the property as his parents had done. Timothy Shields never leased any of the property from the Yeakles.

In 1990, the Yeakles sold the servient estate to one Morris. In this sale, Arlene Yeakle signed an addendum to an offer which stated:

> Buyer agrees to grant Tim Shields access over subject property, in no vehicle larger than a pick-up truck, for a one week period in September for the years 1990 and 1991.

This grant was recorded as a license.

Subsequently, the property was sold to Hunter and his wife. His wife then quitclaimed her interest to Hunter. After Hunter acquired the property in 1991, he attempted to block access to the Allen Road by locking a gate across the Allen Road on several occasions. Timothy Shields cut the lock and proceeded through the road.

Subsequently, Hunter instituted this proceeding to quiet title to his property and to permanently enjoin the Shields from asserting any adverse claim to his title. The Shields counter-claimed, contending they had an easement across the servient estate under the theory of prescription. After a bench trial, the court determined that the Shields' use had at all times been permissive, and they therefore had no right to access or cross the servient estate. The Shields appeal the district court's decision.

## II.

### ISSUES ON APPEAL

The issues on appeal are:

1) Whether the Shields' use of the Allen Road created a prescriptive easement in the road.

2) Whether the evidence was sufficient to establish permissive use and if so, whether the permissive use could become adverse when the dominant estate was transferred.

3) Whether occasional use of the road by the owner of the servient estate will defeat a prescriptive right where the evidence shows the roadway in question was not constructed by the servient landowner, or for his benefit.

4) Whether a purchaser who has inspected the property and seen the road in question takes the property subject to whatever rights may exist therein in favor of third parties.

## III.

## STANDARD OF REVIEW

 Findings of fact will not be set aside unless they are clearly erroneous. *Savage Lateral Ditch Water Users Ass'n v. Pulley*, 125 Idaho 237, 242, 869 P.2d 554, 559 (1993). If the findings of fact are based upon substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *The Highlands, Inc. v. Hosac*, 130 Idaho 67, 69, 936 P.2d 1309, 1311 (1997). This Court is not bound, however, by the trial court's conclusions of law and can draw from the facts its own conclusions. *Id.*

## IV.

## ANALYSIS

### A. The District Court Correctly Concluded That Use Of The Easement Was Permissive.

 This Court recently stated the applicable burden for proving a prescriptive easement. In *Marshall v. Blair*, 130 Idaho 675, 946 P.2d 975 (1997), this Court stated:

In order to establish a private prescriptive easement, a claimant must present reasonably clear and convincing proof of open, notorious, continuous, and uninterrupted use under a claim of right and with the knowledge of the owner of the servient tenement for the prescriptive period of five years. Under claim of right means that the claimant has used the way without recognition of the rights of the owner of the servient tenement. Consequently, a prescriptive right cannot be obtained if the use of the servient tenement is by permis-

sion of its owner, because the use, by definition, was not adverse to the rights of the owner.

. . . .

Generally, proof of open, notorious, continuous, and uninterrupted use of the way for the prescriptive period, without evidence as to how the use began, raises a presumption that the use was adverse and under claim of right. Proof of all these elements shifts the burden to the owner of the servient estate, who must demonstrate that the claimants' use was permissive.

*Marshall*, 130 Idaho at 680, 946 P.2d at 980. The facts are well established, and not disputed, in this case as to open and uninterrupted use of the Allen Road by the Shields. The key issue turns on whether the use was permissive.

 At trial, Denny Shields testified that as far as he knew the Allen Road had been built with Lynch's permission. When the Allen Road was constructed it was not just a trail that was made from vehicles passing over it several times. Denny Shields testified that the construction of this road took a substantial amount of time and as far as he knew, Lynch had given Allen permission to build the road. After the Lynchs sold the property, Arlene Yeakle gave Denny Shields permission to use her pasture and to build a loading chute on her land near the Allen Road. Additionally, Arlene Yeakle gave permission for the Allen Road to be relocated in the 1950s or 1960s. All of this evidence shows that the Allen Road was built and used with the permission of the owners of the servient estate.

The trial court explicitly found from the facts presented at trial that the road was built with Lynch's permission and that since 1934 the use was at all times permissive. When there is evidence of how the use of the road began, the presumption of adverseness that appellants argue for does not apply.

In this case, the road, which was located near the Lynch's residence and outbuilding, was built with Lynch's permission. All of the owners of the servient estate were friends and even family with the Shields. Additionally, Arlene Yeakle gave Denny

Shields permission to graze cattle on her land and to build a loading chute on her land, knowing that he would have to use the Allen Road to access the leased land. Arlene Yeakle also allowed a logger to relocate and use the road. Upon the sale of the servient estate, Arlene Yeakle, who was a licensed real estate agent, negotiated a license for Timothy Shields to use the road for two years when she sold the servient estate. We hold that the findings of fact are supported by the record and, although the evidence is conflicting, they will not be disturbed on appeal.

**B. The Quitclaim Deed From Aleatha And Denny Shields To Timothy Shields Does Not Nullify The Permission Given By The Servient Estate Owner.**

■ The Shields argue that under *Stecklein v. Montgomery,* even if the original use was permissive, that use was automatically revoked when the Lynchs sold the land. *Stecklein v. Montgomery,* 98 Idaho 671, 674, 570 P.2d 1359, 1362 (1977). In *Stecklein,* the Court determined that

> [a]lthough a previous owner did testify that he had given Montgomery permission to use the road, that permission was given in the early 1950's. The property was then sold in 1961. Through the 1960's, during the time when Montgomery was maintaining the road, there is no evidence whatsoever of permission. Absent other evidence of permission, the presumption operates to establish adverseness.

*Id.* at 674, 570 P.2d at 1362.

In *Lorang v. Hunt,* a case where the servient estate was sold several times after permissive use began, this Court held that "[a]bsent unequivocal conduct giving the owner of the property notice of hostility and adverseness, we will not conclude that a use initiated with permission has somehow changed to one of hostility." *Lorang v. Hunt,* 107 Idaho 802, 804, 693 P.2d 448, 450 (1984). *See also, Webster v. Magleby,* 98 Idaho 326, 327, 563 P.2d 50, 51 (1977) ("A use begun under permission or license can be changed into one exercised as a claim of right (i.e., hostile and adverse) only after unequivocal conduct giving the owner of the servient tenement notice of the hostility and adverseness of such claim.").

We view *Stecklein* as distinguishable from the instant case. In *Stecklein,* the Court concluded that the evidence of permission was simply too insubstantial to rebut the presumption of adverseness. In this case, the court made a factual finding that at all times the use had been permissive, even though ownership of the servient estate had changed.

Appellants also argue that even if Denny Shields had permission to use the Allen Road, Timothy Shields was never given permission to use the road and therefore his use was adverse for the requisite period of time. Essentially, this would mean that permission given by the servient estate owner would expire upon sale of the dominant estate.

The Court of Appeals addressed this very question in *Branson v. Miracle,* 111 Idaho 933, 729 P.2d 408 (Ct.App.1986). In *Branson,* the court answered the question "[w]here the ownership of a dominant estate is transferred, does the continuous, notorious exercise by the transferee of an unrevoked permissive use granted to the transferor by the owner of the servient estate convert the use into one of hostility, thus establishing the basis for a prescriptive easement?" *Id.* at 934–35, 729 P.2d at 409–10. The court held that absent a finding that the transferee repudiated the license and actually or constructively communicated to the owner of the servient estate an intention to adversely establish a prescriptive easement, no prescriptive easement resulted. *Id.* at 935, 729 P.2d at 410. We agree.

■ Easements by prescription are not favored by the law. *Lorang v. Hunt,* 107 Idaho 802, 803, 693 P.2d 448, 449 (1984). To hold that permission granted automatically expires without some action of adverseness would be to require that the permission be regranted by the owner of the servient estate each time the dominant estate was transferred. Such a rule would impose too great a burden of inquiry as to property ownership upon servient estate holders. Accordingly, we affirm the trial court's conclusion that the

use by Denny and Timothy Shields was at all times permissive.

### C. Joint Use Of The Claimed Prescriptive Easement By The Owner Of The Servient Estate Will Defeat A Prescriptive Right.

■ There is a common exception to the presumption of adverseness if the use of a driveway is in common with the owner and the general public without some decisive act on the part of the user indicating a separate or exclusive use. *Marshall v. Blair*, 130 Idaho 675, 680, 946 P.2d 975, 980 (1997). This separate act must invade or infringe on the owner's right in order to be considered adverse. *Id.* The exception does not apply in this case because the presumption of adverseness never arose. Since the exception does not apply, no prescriptive easement arose.

### D. The Purchaser Of The Property Would Only Take Subject To The Prescriptive Easement If The Prescriptive Right Had In Fact Been Perfected.

■ This Court has stated that when one is purchasing land, the rule of *caveat emptor* applies and that "whatever is notice enough to excite the attention of a man of ordinary prudence and prompt him to further inquiry, amounts to notice of all such facts as a reasonable investigation would disclose." *Hill v. Federal Land Bank*, 59 Idaho 136, 141, 80 P.2d 789, 791 (1938). *See also, Farrell v. Brown*, 111 Idaho 1027, 1033, 729 P.2d 1090, 1096 (Ct.App.1986).

Although whether Hunter had notice is questionable, the prescriptive right was never perfected because the use was at all times permissive. Therefore, the servient estate was never subject to a prescriptive easement and Hunter did not take the property subject to an easement.

### V.

### CONCLUSION

We affirm the district court's determination that the use by the Shields was at all times permissive and therefore no prescrip-

tive easement arose. Attorney fees are not awarded on appeal. The Shields raised substantial legal questions regarding whether the use was permissive. This appeal was not "brought, pursued or defended frivolously, unreasonably, or without foundation" as required for attorney fees to be awarded. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Cost are awarded to Hunter on appeal.

TROUT, C.J., and JOHNSON, SCHROEDER and WALTERS, JJ., concur.