HEANEY, Senior Circuit Judge.
 

 This case involves whether a Missouri Department of Corrections Rule creates a liberty interest protected by the Fourteenth Amendment. The district court held that the Rule failed to create a liberty interest. We reverse.
 

 BACKGROUND
 

 William Phillip Taylor, an inmate confined in a Missouri penal institution, brought this action pursuant to 42 U.S.C. § 1983.
 

 On July 7, 1986, Taylor’s son rode his motorcycle from Florida to visit his father. When he arrived at the visiting room of the prison during regular visiting hours, he requested a visit presenting himself as an approved visitor
 
 [1]
 
 in a neat and respectful manner with appropriate picture identification. Prison officials denied him permission to visit Taylor.
 

 After being denied permission to visit, Taylor’s son went to the local Salvation Army for assistance. The Salvation Army advised Taylor’s son to request an interview with the warden concerning the denial of visitation. He made such a request, but the request was refused. Two days later, he again sought the assistance of the Salvation Army. A Salvation Army representative was permitted to visit with Taylor and advised him that his son had attempted to visit him. Taylor then contacted his case worker notifying him of the prison’s refusal of the visit. Taylor also wrote the warden notifying him of the refusal as well.
 

 Soon thereafter, Taylor’s son was granted permission to visit Taylor. Unfortunately, by this time Taylor’s son was hospitalized as a result of injuries he received in a motorcycle accident.
 

 Missouri Department of Corrections Rule (MDCR) 20-118-020-02, Chapter 18, provides in part:
 

 INMATE VISITORS:
 

 PURPOSE: Visits by family members, friends and community groups are important factors in maintaining inmate morale and motivation or socially acceptable behavior.
 

 (5) VISITING LISTS: Visiting lists
 
 shall
 
 be approved by the institution head or designated in accordance with the inmate need and personal choice.
 
 Those persons whose name appears on inmates visiting lists shall be allowed.
 

 The district court, adopting the magistrate’s report and recommendation, dismissed Taylor’s complaint as frivolous because the denial of visitation by Taylor’s son was insufficient to invoke the procedural protections of the Fourteenth Amendment.
 

 DISCUSSION
 

 The sole issue presented is whether the state of Missouri, in adopting MDCR 20-118-020-02(5), created a liberty interest protected by the Fourteenth Amendment. On the basis of
 
 Kentucky Department of Corrections v. Thompson,
 
 — U.S. -,
 
 *557
 
 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), we hold that the state has.
 

 In
 
 Thompson,
 
 the Supreme Court held that certain Kentucky prison regulations did not give inmates, for purposes of the Fourteenth Amendment, a liberty interest in receiving certain visitors.
 
 Id.
 
 In so doing, the Court reviewed the limitations that Fourteenth Amendment imposes on prison officials.
 

 We have rejected the notion “that
 
 any
 
 change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause.” This is not to say that a valid conviction extinguishes every direct due process protection; “consequences visited on the prisoner that are qualitatively different from the punishment characteristically suffered by a person convicted of crime” may invoke the protections of the Due Process Clause even in the absence of a state-created right. However, “[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate’s treatment by prison authorities to judicial oversight.” The denial of prison access to a particular visitor “is well within the terms of confinement ordinarily contemplated by a prison sentence,” and therefore is not independently protected by the Due Process Clause.
 

 We have held, however, that state law may create enforceable liberty interests in the prison setting. We have found, for example, that certain regulations granted inmates a protected interest in parole ... in good-time credits ... in freedom from involuntary transfer to a mental hospital ... and in freedom from more restrictive forms of confinement within the prison. In contrast, we have found that certain state statutes and regulations did not create a protected liberty interest in transfer to another prison. The fact that certain state-created liberty interests have been found to be entitled to due process protection, while others have not, is not the result of this Court’s judgment as to what interests are more significant than others; rather, our method of inquiry in these cases always has been to examine closely the language of the relevant statutes and regulations.
 

 Id.
 
 at -, 109 S.Ct. at 1908, 104 L.Ed.2d at 515 (footnote and citations omitted).
 

 To determine whether a state law creates an enforceable liberty interest in the prison setting, we must ask whether the state, through its rules or regulations, placed “ ‘substantive limitations on official discretion,’ ”
 
 id.
 
 at -, 109 S.Ct. at 1909, 104 L.Ed.2d at 516 (quoting
 
 Olim v. Wakinekona,
 
 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)), and whether the rules or regulations contain “ ‘explicitly mandatory language,’
 
 i.e.,
 
 specific directives to the decisionmaker that if the regulations’ substantive predicates are present, a particular outcome must follow. ...”
 
 Id.
 
 (citing
 
 Hewitt v. Helms,
 
 459 U.S. 460, 471-72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)). On the basis of this test, we find that MDCR 20-118-020-02(5) creates a liberty interest protected by the Fourteenth Amendment.
 

 First, MDCR 20-118-020-02(5) places substantive limitations on the discretion of the officials of the prison. The Rule provides, “Visiting lists shall be approved by the institution head or designate in accordance with the individual inmate need and personal choice. Those persons whose names appear on the inmate's visiting list shall be allowed to visit.” This Rule contains “certain ‘substantive predicates’ to guide the decisionmaker" and standards to be applied by prison officials in determining whether certain persons shall be allowed to visit. As to the first half of the test, the instant case is indistinguishable from
 
 Thompson. See id.
 
 — U.S. at -, 109 S.Ct. at 1910, 104 L.Ed.2d at 517 (holding that the Kentucky rules and procedures in question met the first part of the test).
 

 Second, MDCR 20-118-020-02(5) contains the requisite relevant mandatory language. The Rule requires that a particular result must be reached upon a finding that the substantive predicates are met. If a person is on the inmate’s visiting list as designated by prison officials, the prison
 
 *558
 
 officials must allow the visit unless they have a justification for not doing so. The Rule “expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived” of a visit by someone on the approved visiting lists.
 
 Id.
 

 MDCR 20-118-020-02(5) is distinguishable from the rules and procedures with which the
 
 Thompson
 
 Court dealt.
 
 [2]
 
 Unlike the rules and procedures in
 
 Thompson,
 
 MDCR 20-118-020-02(5) requires that certain visitors must be permitted, and thereby has “direct relevance to the decision whether to exclude a particular visitor.”
 
 See id.
 
 — U.S. - n. 4, 109 S.Ct. at 1910 n. 4, 104 L.Ed.2d at 517 n. 4. Unlike the rules and procedures in
 
 Thompson,
 
 MDCR 20-118-020-02(5) contains mandatory language, particularly the word “shall.”
 

 To paraphrase the
 
 Thompson
 
 Court, the overall effect of MDCR 20-118-020-02(5) is such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed so long as the condition that the visitor was on the approved visiting list was met. Or, to state it differently, the Rule is worded in such a way that an inmate, including Taylor, could reasonably expect to enforce it against the prison officials.
 

 CONCLUSION
 

 Accordingly, the district court erred in dismissing Taylor’s complaint as frivolous. Thus, we reverse and remand for further proceedings consistent with this opinion.
 

 [1]
 

 . Taylor’s son was on Taylor's "approved visiting list” as designated by prison officials.
 
 See
 
 Missouri Department of Corrections, Rule 20-118-020-02(5).
 

 [2]
 

 . The
 
 Thompson
 
 court, in holding that the second part of the test was not met, dealt with a state regulation and a prison procedures memorandum. The state regulation provided:
 

 "Certain visitors who are either a threat to the security or order of the institution or noncon-ducive to the successful re-entry of the inmate to the community may be excluded. These are, but not restricted to:
 

 “A. The visitor’s presence in the institution would constitute a clear and probable danger to the institution's security or interfere with the orderly operation of the institution.
 

 "B. The visitor has a past record of disruptive conduct.
 

 "C. The visitor is under the influence of alcohol or drugs.
 

 “D. The visitor refuses to submit to search, if requested to do so, or show proper identification.
 

 “E. The visitor is directly related to the inmate's criminal behavior.
 

 "F. The visitor is currently on probation or parole and does not have special written permission from both his or her Probation or Parole Officer and the institutional Superintendent.”
 

 Commonwealth of Kentucky Corrections Policies and Procedures § 403.06 (issued Aug. 28, 1981, effective Sept. 28, 1981); App. 101-102.
 

 The memorandum provided:
 

 "K.
 
 Visitor Refused Admittance
 

 “(1) The visitor has a past record of disruptive conduct.
 

 "(2) The visitor is under the influence of alcohol or drugs.
 

 “(3) The visitor refuses to submit to search or show proper identification upon request.
 

 "(4) The visitor is directly related to the inmate’s criminal behavior.
 

 "(5) The visit will be detrimental to the inmate’s rehabilitation.
 

 "(6) The visitor is a former resident currently on parole who does not have the approval of his Parole Officer or the Warden.
 

 “(7) The visitor is a former resident who has left by maximum expiration of sentence and does not have the prior approval of the Warden.
 

 “(8) The visitor has previously violated institutional visiting policies.
 

 "(9) Former employees of the Kentucky State Reformatory will not be allowed to visit inmates unless they have authorization from the Warden prior to the time of visit.
 

 "2. A master log will be kept at the Visiting Desk of all visitors who have been denied a visit for any of the reasons listed above. A visitor who is denied a visit will not be allowed to visit an inmate for up to six (6) months following the incident. Persons who bring dangerous drugs or contraband into the institution may be denied visits indefinitely, until permission is granted by the Warden. The Duty Officer has the responsibility of denying a visit for the above reasons.
 

 "a. The master log will be furnished to all institutions and updated as required.
 

 “3. Any time a staff member feels a visitor should not be allowed admittance for any of the reasons above, the Shift Supervisor and the Duty Officer shall be notified. The final decision will be with the Duty Officer. All decisions will be documented. If it is felt that the individual presents a serious threat of danger to himself or others, the Kentucky State Police will be advised of the situation so they may make a decision on whether their intervention is needed.”
 

 Kentucky State Reformatory Procedures Memorandum, No. KSR 16-00-01 (issued and effective Sept. 30, 1985); App. 132-134.