953 P.2d 1363

Karen ZALEHA, an individual,
Plaintiff–Appellant,

v.

ROSHOLT, ROBERTSON & TUCKER, CHTD., an Idaho corporation, John A. Rosholt, J. Evan Robertson, James C. Tucker, Gary D. Slette, Jerry V. Jensen, and Bruce M. Smith, individuals, Defendants–Respondents.

No. 23562.

Supreme Court of Idaho,
Boise, December 1997 Term.

March 11, 1998.

William B. Latta, Jr., Boise, for plaintiff-appellant.

Cantrill, Skinner, Sullivan & King, Boise, for defendants-respondents Rosholt, Robertson & Tucker, Chtd., John A. Rosholt, James C. Tucker, Jerry V. Jensen, and Bruce M. Smith. Robert D. Lewis argued.

Law Office of Brian D. Harper, Twin Falls, for defendant-respondent, J. Evan Robertson.

Hall, Farley, Oberrecht & Blanton, P.A., Boise, for defendant-respondent Gary D. Slette. Candy W. Dale argued.

JOHNSON, Justice.

This is a tort case. We conclude that the defendants did not have a duty to the plaintiff under the circumstances of this case. We also conclude that the trial court did not abuse its discretion in awarding the defendants attorney fees.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

Karen Zaleha (Karen) and D. Bernard Zaleha (Bernard) were married in 1990. Bernard was hired as an associate with Rosholt, Robertson & Tucker (the law firm) in August 1991. The law firm terminated Bernard's employment in October 1992. Bernard applied for unemployment benefits, which were initially denied based on the law firm's statements that he was discharged for misconduct. Later, Bernard was awarded unemployment benefits. In March 1993, Bernard filed for bankruptcy, and the law firm intervened. In August 1993, Bernard filed discrimination claims against the law firm in both state and federal courts.

Karen was not a party to any of Bernard's legal actions. Karen filed her own lawsuit against the law firm and its shareholders (collectively the defendants), alleging tort damages arising out of Bernard's termination from employment, Bernard's unemployment benefits battle, and Bernard's bankruptcy proceedings. Karen alleged civil conspiracy, negligence, intentional and negligent infliction of emotional distress, tortious interference with an economic relationship, and loss of consortium.

Karen's civil conspiracy claim includes allegations of conspiracies by the defendants to discriminate against Bernard based upon Bernard's religious convictions, to interfere with Bernard's constitutional rights, to interfere with Bernard's right to privacy, to inflict emotional distress upon Bernard, and to intervene in Bernard's personal bankruptcy action. Karen admits that the defendants did

nothing to harm her personally other than to terminate Bernard's employment, to contest Bernard's unemployment claim, and to intervene in Bernard's bankruptcy proceedings. All of these actions were directed at Bernard and affected Bernard's rights. Karen did not present any evidence that the defendants conspired against her.

Karen's negligence claim alleges that the law firm breached its duty to Bernard and Karen by misleading Bernard concerning the terms and conditions of his employment, his authority, and the benefits offered by his employment.

Karen's claim for intentional infliction of emotional distress alleges that the defendants caused Bernard severe emotional distress by the manner in which they dismissed him from his employment. She alleges this inflicted severe emotional distress on her.

Karen's claim for negligent infliction of emotional distress alleges that, by their conduct toward Bernard, the defendants caused her emotional distress accompanied by physical manifestations and injury.

Karen's claim for interference with economic relationship alleges that the defendants' intentional infliction of emotional distress, their efforts to deprive Bernard of his bankruptcy action, and their efforts to deprive Bernard of unemployment compensation intentionally interfered with her employment at a real estate brokerage. Karen did not assert any facts indicating how the defendants interfered with this employment relationship.

The trial court granted the defendants summary judgment. Karen appealed.

## II.

## THE DEFENDANTS DID NOT HAVE A DUTY TO KAREN UNDER THE CIRCUMSTANCES OF THIS CASE.

Karen asserts that she was a foreseeable party whom the defendants knew or with the exercise of reasonable care should have known would be damaged by their knowing and tortious conduct directed at Bernard. We conclude that the defendants did not

have a duty to Karen under the circumstances of this case.

In support of their motions for summary judgment, the defendants use Karen's own recitation of the facts upon which she bases her claims. All of these facts relate to actions of the defendants against Bernard. In opposition to the motions, Karen did not assert that the defendants took any action against her directly. In essence, Karen asks that she be allowed to pursue claims for damages to her based on the effect that the conduct of the defendants against Bernard had on her.

Karen has not cited, nor have we been able to locate, any prior decision of this Court imposing a duty on a defendant not to injure a person by conduct directed toward the person's spouse. In *Rife v. Long*, 127 Idaho 841, 908 P.2d 143 (1995), the Court considered the appropriate analysis where we must consider extending the duty of care. In *Rife*, we said:

> We only engage in a balancing of the harm in those rare situations when we are called upon to extend a duty beyond the scope previously imposed, or when a duty has not previously been recognized.... Determining whether a duty will arise in a particular instance involves a consideration of policy and the weighing of several factors which include:
>
> > [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved (citations omitted).

*Id.* at 846, 908 P.2d at 148.

■ In the present case, we focus on the closeness of the connection between the defendants' conduct and the injury suffered. The defendants did not direct any of their conduct toward Karen. If she suffered injury, it was indirect injury based on her emotional reaction to the conduct of the defendants toward Bernard. We conclude that the connection between the defendants' conduct and any injury Karen suffered is too tenuous to impose a duty on the defendants. Therefore, we uphold the trial court's grant of summary judgment to the defendants on all of Karen's claims, except her claim for loss of consortium, which we address next.

## III.

## A LOSS OF CONSORTIUM CLAIM MUST BE JOINED WITH THE SPOUSE'S CLAIM.

Karen asserts that her claim for loss of consortium did not have to be made part of Bernard's claim. We disagree.

■ "The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse." *Runcorn v. Shearer Lumber Prods., Inc.*, 107 Idaho 389, 394, 690 P.2d 324, 329 (1984). A loss of consortium claim should be pursued together with, and in conjunction to, the injured spouse's claim against the third party tortfeasor. This is because the extent of the injury to the injured spouse will determine the scope of the loss of consortium. A loss of consortium claim is necessarily dependent upon the injured spouse's success or failure in the underlying claim against the third party. When there has been no physical injury, "[t]he loss of consortium issue [is] dependent upon the issue of intentional infliction of emotional distress" suffered by the injured spouse. *O'Dell v. Basabe*, 119 Idaho 796, 809, 810 P.2d 1082, 1095 (1991). The loss of consortium springs from only one injury—the injury to the injured spouse. *See Thompson v. St. Paul Fire & Marine Ins. Co.*, 108 Idaho 802, 803, 702 P.2d 840, 841 (1985) (grouping loss of consortium claim with claim of injured spouse as one claim for applying per person liability policy limits).

■ If Karen's loss of consortium claim were litigated independently of Bernard's, she would have to prove Bernard's injuries as a prerequisite to her recovery for loss of

consortium. Since Bernard would also have to prove his injuries in his own action against these same defendants, there is a risk of duplication of efforts and inconsistent results. Judicial resources and consistency demand that Karen's claim for loss of consortium be pursued only in conjunction with Bernard's action. Therefore, we uphold the trial court's dismissal of this claim.

## IV.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN AWARDING ATTORNEY FEES.

Karen asserts that the trial court should not have awarded attorney fees against her. We conclude that the trial court did not abuse its discretion in making the award.

■ An award of attorney fees pursuant to section 12–121 of the Idaho Code (I.C.) is discretionary and is subject to review and vacation only upon a showing of an abuse of discretion. *Savage Lateral Ditch Water Users Ass'n v. Pulley*, 125 Idaho 237, 250, 869 P.2d 554, 567 (1993). In reviewing an exercise of discretion, this Court must consider "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ Initially, the trial court awarded attorney fees to defendants Slette and Robertson based upon a finding that Karen's claims were frivolous, unfounded and not supported by the law of Idaho. In a separate order, the trial court awarded attorney fees to the remaining defendants pursuant to I.C. § 12–121. Apparently, the trial court intended that this second award be supported by the trial court's rationale contained within the first award. We conclude that the trial court correctly perceived its decision on the awards as a matter of discretion, acted within the boundaries of its discretion and consistently with the applicable legal standards, and reached its decision by an exercise of reason. Therefore, we conclude that the trial court did not abuse its discretion in making the awards.

## IV.

## CONCLUSION

We affirm the summary judgment dismissing Karen's claims.

We affirm the trial court's award of attorney fees to the defendants.

We award the defendants costs, but not attorney fees, on appeal.

TROUT, C.J., and SILAK, SCHROEDER and WALTERS, JJ., concur.